HYDRAULICS, INC., Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Lynn Anderson, Appellant).

Second District (Industrial Commission Division)   No. 2—00—1186WC

Opinion filed March 22, 2002.—Rehearing denied May 22, 2002.

McCULLOUGH, P.J., specially concurring.

Richard D. Hannigan, of Weisz, Michling & Hofmann, P.C., of Woodstock, and Michael J. Evers, of Whitney, Wolfe, Elfenbaum & Evers, P.C., of Chicago, for appellant.

William A. Lowry, Bruce D. Crofts, and Thomas D. Nyhan, all of Nyhan, Pfister, Bambrick, Kinzie & Lowry, P.C., of Chicago, for appellee Hydraulics, Inc.

Charles G. Haskins, Jr., and David B. Menchetti, both of Cullen, Haskins, Nicholson & Menchetti, P.C., of Chicago, for *amicus curiae* Illinois AFL-CIO.

Arnold G. Rubin, of Chicago, and Kim Edward Presbrey, of Presbrey & Associates, P.C., of Aurora, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HOLDRIDGE delivered the opinion of the court:

This case comes to us pursuant to the application for leave to appeal, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), filed by the claimant, Lynn Anderson. The circuit court of McHenry County, Illinois, certified the following question on which it found a substantial ground for a difference of opinion, and the court determined that an immediate appeal might materially advance the ultimate termination of the litigation.

The question identified by the trial court is as follows:

"Whether *ex parte* conferences between an injured worker's health care provider(s) and the employer or their legal representative(s) are, or should be prohibited by:

1. Operation of the doctrine enunciated in *Petrillo v. Syntex*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986), or

2. The right to privacy found in the Illinois Constitution, or

3. Section 8—802 of the Illinois Rules of Evidence, or

4. Administrative Rule 7110.70 *et seq.* of the Illinois Industrial Commission, or

5. The common law physician-patient privilege, or

6. The public policy against such communications described in *Vernon Best v. Taylor Machine Works*, 179 Ill. 2d 367, 485, 689 N.E.2d 1057, 1100 (1997)."

This court granted claimant's application for leave to appeal. The following are the pertinent facts contained in the record. On November 17, 1997, Lynn Anderson (claimant) filed an application for adjustment of claim with the Illinois Industrial Commission (Commission) alleging an injury to her left wrist on September 30, 1997, resulting from repetitive trauma. On that date, she reported to her supervisor that her left wrist was "burning." There had been no indication of prior wrist pain. Claimant's supervisor sent her to see Ms. Rhonda Pencak, the employer's "health service coordinator." Although Pencak appeared to be an employee of Hydraulics, Inc. (employer), she was actually an employee of Disability Management Services. Pencak provided on-site contract services at the employer's facility. Her duties included "taking care of injuries, handling workers compensation, etc."

Pencak sent claimant to the company's clinic, Occupational Health, where claimant treated with Dr. Jablonowski from October 1, 1997, through October 27, 1997. After each visit from claimant, Dr. Jablonowski sent Pencak a work qualification report (WQR) on claimant, each time stating that claimant's symptoms were work-related and that she needed light-duty restrictions. Based upon Dr. Jablonowski's recommendations, the employer provided claimant with light duty.

On November 3, 1997, Dr. Jablonowski referred claimant to Dr. Cox, who diagnosed a fracture of the left wrist. A copy of Dr. Cox's report was sent to Pencak. After receipt of Dr. Cox's report, Pencak immediately conferred with the employer's insurance carrier and counsel. At this conference, it was decided to deny claimant's claim. Thereafter, the employer refused to pay temporary total disability (TTD), authorize payment for medical services, or approve light duty.

Meanwhile, Dr. Cox had referred claimant to Dr. Ruder, a hand surgeon. Dr. Ruder recorded claimant's history of hand injury and diagnosed her condition as a fracture of the left scaphoid (boat-shaped, navicular, hollowed bone of the carpus or the tarsus) with bone cysts. In his operative report of November 24, 1997, Dr. Ruder indicated that the fracture was work-related. On January 2, 1998, Dr. Ruder opined that claimant's wrist pain (pathology) was related to her work duties.

On November 6, 1997, Pencak placed a telephone call to Dr. Ruder. After this telephone conversation, Pencak decided to seek another medical opinion and sent claimant's medical records to Dr. Albert Mitsos. Dr. Mitsos issued a report dated December 5, 1997, stating an opinion that claimant's injury was not work-related.

The matter went to hearing before an arbitrator on January 6, 1998. One day prior to a second hearing, on February 3, 1998, employer's new counsel sought a continuance, citing the need to take Dr. Ruder's deposition. (At no time did employer's counsel file a *dedimus potestatem* motion seeking to take Dr. Ruder's deposition, nor did they subpoena Dr. Ruder to testify before the arbitrator.) The continuance was granted.

Meanwhile, Pencak and two attorneys for the employer shot videotape of claimant's work site and someone else doing the job. Although a job description existed for claimant, Pencak created a completely new job description. Although the videotape and the job description were created during litigation, neither was provided to claimant's attorney. Pencak then sent a letter to Dr. Ruder, along with a copy of the video, the new job description, and Dr. Mitsos' report indicating that claimant's injuries were not job-related. In that letter, Pencak advised Dr. Ruder of the employer's theory of defense and asked Dr. Ruder if the evidence provided changed his position as to causation. Following this communication, Dr. Ruder issued a "clarified" opinion, finding no causal connection between the claimant's injury and her work. This communication with Dr. Ruder had not been authorized by claimant.

At hearing, claimant objected to the introduction of any evidence resulting from the contact with Dr. Ruder. Claimant argued against admission of the videotape, the new job description, and Dr. Ruder's clarified opinion. The arbitrator agreed, finding that the employer violated *Petrillo* in communicating with Dr. Ruder without claimant's permission.

On review, the Commission ruled that Pencak violated *Petrillo* in communicating with Dr. Ruder. However, it vacated the arbitrator's decision and remanded the cause for a new hearing, holding that the arbitrator should have allowed the videotape and the job description. The Commission majority made the following observation:

> "This is not a case where the petitioner has refused to turn over medical records at the onset of the injury. Were that to occur, the Petitioner would not be entitled to benefits. The facts before the Commission concern a nurse for respondent having an *ex parte* communication with Petitioner's treating physician regarding his opinion on causality, and seemingly attempting to change the outcome of that opinion. To hold a workers' compensation claimant, by virtue of filing an Application for Adjustment of Claim, waives his or her physician-patient privilege flies in the face of the public policy announced by the Illinois Appellate Court in *Petrillo*, and more recently, the Illinois Supreme Court in *Best*."

On March 2, 1999, a hearing was held before the arbitrator pursuant to remand from the Commission. The arbitrator took Pencak's testimony wherein she admitted that she had not sought claimant's permission prior to communicating with Dr. Ruder. At this hearing, the arbitrator again excluded the new job description and Dr. Ruder's revised opinion, but admitted the videotape. After reviewing the new evidence, the arbitrator again adopted his original decision. Employer again sought review before the Commission.

The Commission again affirmed the arbitrator's decision, with Commissioner Stervenson dissenting, reasserting his previous dissent stating his position that *Petrillo* did not apply to workers' compensation claims.

Employer sought review in the circuit court of McHenry County. Originally, the trial court ruled, as a matter of law, that the prohibition against *ex parte* communications stated in *Petrillo* did not apply to workers' compensation claims. However, following a motion for reconsideration, the trial court certified the question to this court, which accepted certification.

■ *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986), is the starting point for analysis of *ex parte* prohibitions. In a nutshell, *Petrillo* held that citizens of Illinois have a confidential and fiduciary relationship with their physicians. That confidentiality has a constitutional dimension that cannot be left at the door of the courthouse. The heart of the *Petrillo* doctrine is found in this lengthy excerpt:

> "[W]e believe that the fiduciary relationship existing between the patient and physician requires, at the very minimum, that the patient have a right to rest assured that the physician will act in good faith while, at the same time, the physician complies with court-authorized discovery. Thus, when a patient files suit, the physician should be prepared to release those records relevant to the condition placed at issue, be available to give depositions, and be prepared to testify should he be called upon to do so. *** Discussion of the patient's confidences under any other circumstances, such as the *ex parte* conference, could be inconsistent with the duties of *** the physician ***. *** [T]he *ex parte* conference involves conduct which could be violative of the duties of a fiduciary and would, therefore, be contrary to public policy favoring the fiduciary nature of the physician-patient relationship." *Petrillo*, 148 Ill. App. 3d at 594-95, 499 N.E.2d at 961.

In addition, our supreme court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 458, 689 N.E.2d 1057, 1100 (1997), expressed approval of the *Petrillo* rationale, stating, "We believe that the rationale of the *Petrillo* court is sound and that there is a strong public policy against

*ex parte* [communications with health care providers]." *Best* further found a constitutional dimension to the privacy of physician-patient relations.

■ Throughout *Petrillo*, the court stressed that *ex parte* communication produces no better or greater evidence than that which is obtainable through traditional means of discovery. We note that workers' compensation practice, while not subject to discovery procedures as provided under the Code of Civil Procedure (735 ILCS 5/1—101 *et seq.* (West 1998)), nonetheless has analogous avenues for securing information from treating physicians. Every competent, non-*ex parte* method of acquiring medical information referenced in *Petrillo* as a basis for barring *ex parte* contact, including subpoenas, release of relevant records, interrogatories, oral depositions, and live testimony, can be found in an analogous form within the Workers' Compensation Act (Act) (820 ILCS 305/16 (West 1998)). These procedures under the Act and the rules of the Commission provide sufficient methods for the employer to obtain all the information necessary to act upon a claim within the proper time frame. In view of the existence of discovery-like methods in workers' compensation, we see no reason to override the public policy and constitutional aspects of the sanctity of physician-patient relationship for the workers' compensation arena, where the courts have already held that *ex parte* communications violate those public policy and constitutional concerns in the personal injury arena.

Accordingly, we answer the certified question as follows.

■ *Ex parte* communications between an injured worker's health care provider(s) and the employer or their legal representative(s) are prohibited by operation of the doctrine enunciated in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986), and the public policy against such communications described in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 458, 689 N.E.2d 1057, 1100 (1997). Thus, we answer subparts 1 and 6 of the certified question in the affirmative. We find it unnecessary to answer the remaining subparts of the certified question, although we note that the prohibition against *ex parte* communication articulated in *Petrillo* and ratified in *Best* is deeply rooted in both the common-law physician-patient privilege (*Petrillo*, 148 Ill. App. 3d at 591, 596) and the right to privacy found in the Illinois Constitution (*Best*, 179 Ill. 2d at 458). We also note that the Act and the rules of the Commission provide sufficient methods for an employer to obtain timely information necessary for the fair and efficient resolution of claims. As with discovery under matters governed by the Code of Civil Procedure, the methods for obtaining medical information available to the employer under the Act and the rules of the Commission provide adequate and sufficient means for

gathering necessary medical information while still honoring the sanctity of the physician-patient relationship.

Based upon our answer to the certified question, we reverse the order of the circuit court and remand the cause for further proceedings.

Certified questions answered; order reversed and cause remanded for further proceedings.

HOFFMAN, O'MALLEY, and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:

I agree with the ruling of the majority and submit the following.

The supreme court in *Best* referred to *Petrillo* stating, *"ex parte* conferences were not necessary to obtain information for defending a lawsuit because the discovery methods outlined by Supreme Court Rule 201 were sufficient." *Best*, 179 Ill. 2d at 453, 689 N.E.2d at 1098. The *Best* court also in discussing *Petrillo* stated:

> "[T]he *Petrillo* court distinguished between medical information which is considered waived by the filing of a lawsuit and information which is not waived. The court noted that disclosure of information could be accomplished by either an express consent or one implied at law by the patient's conduct, such as the filing of a lawsuit. With respect to the latter situation, the patient filing suit implicitly agrees to his or her doctor's release of any medical information related to the specific physical or mental condition which the patient has placed in issue. However, the plaintiff's implied consent (or waiver of information) 'is obviously and necessarily limited; he consents only to the release of his medical information (relative to the lawsuit) *pursuant to the methods of discovery authorized by Supreme Court Rule 201(a)* (87 Ill. 2d R. 201(a)).' (Emphasis in original.) [Citation.] The plaintiff-patient does not, by the simple act of filing suit, consent to *ex parte* discussions between his treating doctor and defense counsel, nor does he consent to disclosure of confidential information unrelated to the subject matter of the lawsuit." *Best*, 179 Ill. 2d at 457, 689 N.E.2d at 1099-1100.

Under section 8(a) of the Act, the employer is responsible for all "necessary medical, surgical and hospital services *** which [are] reasonably required to cure or relieve from the effects of the accidental injury." 820 ILCS 305/8(a) (West 1998). Section 8(a) also provides:

> "Every hospital, physician, surgeon or other person rendering treatment or services in accordance with the provisions of this Section shall upon written request furnish full and complete reports

thereof to, and permit their records to be copied by, the employer, the employee or his dependents, as the case may be, or any other party to any proceeding for compensation before the Commission, or their attorneys." 820 ILCS 305/8(a) (West 1998).

This court, as well as the supreme court, has stated that the provisions of the Code of Civil Procedure and the supreme court rules are inapplicable to procedures regulated by the Act. *Elles v. Industrial Comm'n*, 375 Ill. 107, 113, 30 N.E.2d 615, 618 (1940). See also *Chicago Transit Authority v. Industrial Comm'n*, 238 Ill. App. 3d 202, 205, 606 N.E.2d 236, 238 (1992); *Chambers v. Industrial Comm'n*, 132 Ill. App. 3d 891, 893, 478 N.E.2d 498, 499 (1985).

As the majority states, the discovery rules discussed in *Best* and *Petrillo* do not apply in workers' compensation cases. The provisions of section 8(a) do allow the employer appropriate methods to determine merits of the claim, its nature, and its extent. The admissibility of evidence is subject at all times to the discretion of the rulings of the Commission.