581 S.E.2d 836

**Sherry BROWN, Employee, Petitioner,**

v.

**BI–LO, INC., Employer and Self–Insurer, Respondent.**

**No. 25662.**

Supreme Court of South Carolina.

Heard Oct. 9, 2002.

Decided June 9, 2003.

Rehearing Denied June 25, 2003.

Donald R. Moorhead, of Donald R. Moorhead, PA, of Greenville, for petitioner.

Jeffrey Scott Jones, of Wilson & Jones, LLC, of Greenville, for respondent.

Alford Haselden, of Haselden, Owen, & Boloyan, of Clover; and Desa A. Ballard, of Desa A. Ballard, PA, of West Columbia, for Amicus Curiae South Carolina Trial Lawyers' Association.

Samuel Painter, of Nexsen, Pruet, Jacobs and Pollard, of Columbia, for Amicus Curiae South Carolina Self–Insurers' Association.

Jeffrey Ezell and Michelle DeLuca O'Connor, Gallivan, White & Boyd, PA, of Greenville, for Amicus Curiae South Carolina Defense Trial Attorneys' Association, Inc.

Justice BURNETT:

We granted a writ of certiorari to review the Court of Appeals' decision in *Brown v. Bi–Lo, Inc.*, 341 S.C. 611, 535 S.E.2d 445 (Ct.App.2000). We reverse.

## FACTS

Petitioner Sherry Brown (Employee) sustained a compensable injury while working for Respondent Bi–Lo, Inc., (Employer). After Employee's surgery, Employer agreed to continue to provide medical treatment. Several years later, a question arose whether medical treatment sought by Employee for subsequent falls was related to the work injury and, thus, whether Employer was required to pay for the medical treatment. Employee filed a Form 50 requesting a hearing to obtain medical treatment.

Employer hired a rehabilitation nurse to contact Employee's treating physicians regarding the nature of her condition and cause of her falls. Employee's attorney wrote a letter to the nurse warning her not to discuss Employee's condition with Employee's treating physicians and threatening legal action if she did not comply. Employee's attorney wrote similar letters to Employee's treating physicians, advising them not to engage in *ex parte* communications with Employer or Employer's workers' compensation carrier.

Employer complained to the Workers' Compensation Commission (Commission). The Commission ordered Employee's attorney to "cease and desist from obstructing contact, including contact involving *ex parte* communications, meetings, correspondence, and/or answering questions in written and oral form, between the treating physician and the defendant's representatives."

## ISSUE

Did the Court of Appeals err by affirming the Commission's order requiring Employee's counsel to cease and desist from seeking to limit contact between Employer's representatives and Employee's health care providers?

## DISCUSSION

The South Carolina Workers' Compensation Act (the Act) [1] requires physicians provide employers and/or their representatives with pertinent information regarding the treatment of

---

1. S.C.Code Ann. § 42–1–10 *et. seq.* (1985).

a compensation claimant.[2]  South Carolina Code Ann. § 42–15–95 (Supp.2002) specifically provides:

> All *existing information* compiled by a health care facility, as defined in Section 44–7–130, or a health care provider licensed pursuant to Title 40 pertaining directly to a workers' compensation claim must be provided to the insurance carrier, the employer, the employee, their attorneys or the South Carolina Workers' Compensation Commission, within fourteen days after receipt of *written request.*  A health care facility and a health care provider may charge a fee for the search and duplication of a *medical record,* ... The facility or provider may charge a patient or the patient's representative no more than the actual cost of reproducing an *X-ray* ... *If a treatment facility or physician fails to send the requested information within forty-five days after receipt of the request,* the person or entity making the request may apply to the commission for an appropriate penalty payable to the commission, not to exceed two hundred dollars.

(emphasis added); *see* 25A S.C. Ann. Reg. 67–1301(A)(Supp.2002) ("[a] medical practitioner or treatment facility shall furnish upon request all medical information relevant to the employee's complaint of injury to the claimant, the employer, the employer's representative, or the Commission.  . . .").

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Charleston County Sch. Dist. v. State Budget and Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993).  If a statute's language is plain, unambiguous, and conveys a clear meaning "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

■  Section 42–15–95 contemplates the disclosure of existing written records and documentary materials.  The statute refers to the exchange of "existing information," "medical record[s]," and "X-ray[s]" after receipt of a written request.

---

**2.**  The Act specifies that facts communicated to or otherwise learned by a physician during the course of treatment are not privileged. S.C.Code Ann. § 42–15–80.

Moreover, it provides a penalty if the facility or physician fails to "send" information as requested. This language indicates the General Assembly's clear intent to require health care providers and facilities to forward existing written records and documents. The statute does not authorize other "*ex parte*"[3] methods of communication between an insurance carrier, employer, or their representatives and the claimant's health care provider. Of course, insurance carriers and employers may obtain additional information through approved methods of discovery. *See* § 42–3–160 (providing for taking of depositions in workers' compensation actions). Likewise, employer representatives may speak with the claimant's health care provider provided they obtain the claimant's permission.[4]

We recognize the Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation. *Brown v. South Carolina Dep't of Health and Envtl. Control,* 348 S.C. 507, 560 S.E.2d 410 (2002). Nevertheless, where, as here, the plain language of the statute is contrary to the agency's interpretation, the Court will reject the agency's interpretation. *Id.; Richland County School Dist. Two v. South Carolina Dept. of Educ.,* 335 S.C. 491, 517 S.E.2d 444 (Ct.App.1999).

We agree with the Court of Appeals that permitting employers and their representatives to speak and/or communi-

---

**3.** We use the term *"ex parte* communication" because that was the term used by the Commission. However, the exchange of information sought here by Employer is not an *"ex parte* communication." *Black's Law Dictionary* 597 (7th ed.1999) (*ex parte* communication is defined as "prohibited communication between counsel and the court when opposing counsel is not present.").

**4.** Our analysis is supported by similar decisions in North Carolina holding that policy considerations of patient privacy, physician-patient confidences, and the adequacy of formal discovery methods render *ex parte* communications between an employee's treating physician and employer representatives improper. *Burchette v. East Coast Millwork Dist., Inc.,* 149 N.C.App. 802, 562 S.E.2d 459 (2002); *Salaam v. North Carolina Dep't of Transp.,* 122 N.C.App. 83, 468 S.E.2d 536 (1996), *cert. dismissed as improvidently granted* 345 N.C. 494, 480 S.E.2d 51 (1997). Other jurisdictions hold similarly. *Hydraulics, Inc. v. Industrial Comm'n,* 329 Ill.App.3d 166, 263 Ill.Dec. 679, 768 N.E.2d 760 (2002); *Linton v. City of Great Falls,* 230 Mont. 122, 749 P.2d 55 (1988) *rev'd on other grds. Anderson v. Hammer,* 252 Mont. 73, 826 P.2d 931 (1992); *Travelers Ins. Co. v. Woodard,* 461 S.W.2d 493 (Tex.Civ.App.1970).

cate directly with physicians may, in some instances, promote "swift and sure compensation," which is one goal of the Act.[5] Nevertheless, workers' compensation is a creature of statute. As such, we are bound to strictly construe the terms of the statute and to rely on the General Assembly to amend the statute where necessary. *See Wigfall v. Tideland Utilities, Inc.,* Op. No. 25628, 354 S.C. 100, 110, 580 S.E.2d 100, 105 (2003) (because Act provides compensatory system in derogation of common law rights, Court must strictly construe the statute and leave it to the General Assembly to amend and define any ambiguities).

For these reasons, we reverse the decision of the Court of Appeals. S.C.Code Ann. § 1–23–380(A)(6) (Supp.2002) (court may reverse decision if substantial rights of appellant have been prejudiced because agency conclusions are affected by error of law).

**REVERSED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully disagree with the majority's conclusion and would affirm the Court of Appeals.

Workers' compensation laws were enacted so that the "employee receives the right to swift and sure compensation; the employer receives immunity from tort actions by the employee. This quid pro quo approach to workers' compensation has worked to the advantage of society as well as the employee and employer." *Parker v. Williams and Madjanik, Inc.,* 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980). The purpose of workers' compensation is to settle claims quickly and efficiently. *Id.* One of the ways the legislature sought to insure this result was by enacting statutes that require the exchange of medical information so that claims can be evaluated and settled in a timely manner.

---

**5.** *See Parker v. Williams and Madjanik, Inc.,* 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980).

Both the employer's representatives and the claimant's representatives must comply with the statutes and regulation compelling disclosure of relevant medical information. S.C.Code Ann. § 42–15–95 (1976) provides:

> All *existing information* compiled by a health care facility, as defined in Section 44–7–130, or a health care provider licensed pursuant to Title 40 *pertaining directly* to a workers' compensation claim must be provided to the insurance carrier, the employer, the employee, their attorneys or the South Carolina Workers' Compensation Commission, within fourteen days after receipt of written request. . . .

(emphasis supplied).

25A S.C.Code Ann. Reg. § 67–1301(A) (Supp.2001) provides "[a] medical practitioner or treatment facility *shall furnish upon request all medical information relevant to the employee's complaint of injury* to the claimant, *the employer, the employer's representative,* or the Commission . . . ." (emphasis supplied). The claimant's health care providers and treatment facilities are thus compelled by the statute, and by the regulation, to disclose information relevant to the claimant's injury to all parties and their representatives.

The question before us is whether the Commission properly interpreted its regulation to allow Employer and its representatives to contact the health care providers *"ex parte"* [1] whether face to face, through written correspondence, or through oral communications. The decision of an agency interpreting its own regulation is given great deference. *Goodman v. City of Columbia,* 318 S.C. 488, 458 S.E.2d 531 (1995). I would find

---

1. I agree with the majority that the phrase *"ex parte* communication" is not the appropriate term. The exchange of information sought by Employer is not an *"ex parte* communication." An *ex parte* communication is defined as "prohibited communication between counsel and the court when opposing counsel is not present." *Black's Law Dictionary* 597 (Bryan A. Garner ed., 7th ed., West 1999). The phrase *"ex parte* communication" implies that the communication was with the court. Here, the communication was between the employer's representative and a witness. Further, the phrase implies the communication was done without notice to the other party. In this case, the claimant was on notice that the Employer's representatives could communicate with the physician because she initiated the workers' compensation claim.

that such an interpretation of the regulation[2] was not an abuse of discretion.[3]

Both the statute and the regulation compel the claimant's health care provider to furnish the employer's representatives medical information pertaining to the worker's claim.[4] The providers are limited to furnishing information that is relevant to the patient's claim. So long as the information is relevant to the claim, the provider is not limited as to the manner of its communication. While "existing information" will most often take the form of written records nothing precludes the provider from communicating verbally or in writing with anyone authorized to receive such information. I would hold that neither the claimant nor his attorney is permitted, in the workers' compensation setting, to limit the communication between the employer's representatives and the claimant's medical provider as to matters relevant to the claim.

Petitioner expresses concern that the doctor may exceed the scope of relevant medical information when responding to such an inquiry. Physicians must be guided by their code of medical ethics.[5] In my opinion, since the responses are com-

---

2. There is no challenge to the regulation as exceeding the agency's authority.

3. I agree with the majority that decisions of North Carolina courts construing that state's workers' compensation statutes are entitled to great weight. *Nelson v. Yellow Cab Co.*, 349 S.C. 589, 564 S.E.2d 110 (2002). However, I respectfully disagree that North Carolina's precedent is entitled to great weight in the case at bar. North Carolina recognizes a physician-patient privilege, *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990), while South Carolina does not. *McCormick v. England*, 328 S.C. 627, 494 S.E.2d 431 (Ct.App.1997). North Carolina's Supreme Court first held that *ex parte* communications were inappropriate in a medical malpractice case in *Crist v. Moffatt, supra.* The North Carolina Court of Appeals then held that *ex parte* communications, therefore, were also banned in workers' compensation cases, but stated were they "writing on a clean slate" the defendant's arguments for *ex parte* communications "would carry great force ... we nonetheless are bound by *Crist.*" *Salaam v. N.C.D.O.T.*, 122 N.C.App. 83, 468 S.E.2d 536, 539 (1996). We are writing on a "clean slate."

4. S.C.Code Ann. § 42–15–95 (1976); 25A S.C.Code Ann. Reg. § 67–1301(A)(Supp.2001).

5. A physician is governed by the ethical guidelines adopted and published by the Board of Medical Examiners. S.C.Code Ann. § 40–47–200

pelled by law, the physician who respects the line between information relevant to the claim, and that which is irrelevant, would not be exposed to liability for improper disclosure.[6]

I respectfully disagree with the majority and would find that the Commission did not err in ordering Petitioner's attorney to cease and desist from seeking to limit contact between the Employer's representatives and Petitioner's health care provider. Therefore, I would affirm the decision of the Court of Appeals.

---

(1976). The relevant provision reads, "A physician shall respect the rights of patients, of colleagues, and of other health professionals, and shall safeguard patient confidences within the constraints of the law." 26 S.C.Code Ann. Reg. § 81–60(D) (Supp.1995).

**6.** *See South Carolina State Bd. of Med. Exam. v. Hedgepath*, 325 S.C. 166, 480 S.E.2d 724 (1997) (Court held "[a] physician acts ethically when she maintains patient confidences, and when she provides confidential information to others *as required by law* or as authorized by the patient"); *McCormick v. England*, 328 S.C. 627, 494 S.E.2d 431 (1997) (Court allowed that under certain circumstances, a physician might be required to reveal confidences when public interest dictates disclosure, and that even though the breach of confidentiality tort exists, "the right is not absolute and must give way *when disclosure is compelled by law* or is in the best interest of the patient or others").