**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

John Doe, Plaintiff,

v.

Mark Keel, in his official capacity as Chief of the South Carolina State Law Enforcement Division, Defendant.

Appellate Case No. 2022-000388

————————

**ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA**

————————

Opinion No. 28170
Heard February 9, 2023 – Filed August 9, 2023

————————

**CERTIFIED QUESTION ANSWERED**

————————

David Allen Chaney Jr., of Greenville, and Meredith McPhail, of Columbia, both of American Civil Liberties Union of South Carolina, for Plaintiff.

Andrew F. Lindemann, of Lindemann & Davis, P.A., of Columbia, for Defendant.

————————

**JUSTICE JAMES:** A person who is convicted of certain sex offenses and who resides in South Carolina must register as a sex offender with the sheriff in his county of residence. The South Carolina Law Enforcement Division (SLED) then publishes certain information about convicted sex offenders on the Sex Offender Registry (the Registry). Doe is a convicted sex offender who moved from South Carolina to Georgia in 2015. He commenced this action in federal court against the Chief of SLED, Mark Keel, contending in part that because he no longer resides in South

Carolina, SLED should be prohibited from continuing to publish his name and information on the Registry.

Pursuant to Rule 244, SCACR, the United States District Court for the District of South Carolina certified the following question to this Court:

> Does the South Carolina Sex Offender Registry Act (SORA)[1] permit the publication of out-of-state offenders—i.e., individuals with qualifying sexual offenses but who do not live in South Carolina—on the state's public sex offender registry?

This question references an "out-of-state offender," which is defined by SLED regulations as "any person . . . who has been convicted in another state of any offense which can be reasonably interpreted as corresponding to those provided for in the South Carolina Code of Laws." S.C. Code Ann. Regs. 73-200(C) (2012). Doe's stipulated status as a nonresident, not his status as an out-of-state offender, is relevant to the certified question. For the purposes of SORA, "a person who remains in this State for a total of thirty days during a twelve-month period is a resident of this State." S.C. Code Ann. § 23-3-430(B). Therefore, we rephrase the certified question as follows:

> Does the South Carolina Sex Offender Registry Act (SORA) permit the publication of nonresident offenders—i.e., individuals with qualifying sexual offenses who do not live in South Carolina—on the state's public sex offender registry?

We hold SORA and SLED regulations[2] require us to answer this question "yes."

## Background

In 2011, Doe was convicted of an online sexual offense in Colorado and sentenced to probation. When he committed the offense, Doe was a resident of Greenville County and a student at the University of South Carolina. Because Doe resided in South Carolina, section 23-3-430 of SORA required him to biannually register with the sheriff in the county of his residence. Doe registered in South Carolina until he moved to Georgia in 2015. Because he moved out of state, Doe's obligation to register in South Carolina was suspended and his probationary sentence was transferred to Georgia. After Doe completed probation, he successfully

---

[1] S.C. Code Ann. §§ 23-3-400 to -555 (2007 & Supp. 2022).

[2] S.C. Code Ann. Regs. 73-200 to -270 (2012).

petitioned in Georgia to be relieved of his duty to register under Georgia law. SLED agrees Doe is not required to physically register in South Carolina because he does not reside in South Carolina. However, SLED continues to publish Doe's name, picture, offense, vehicle information, and last known address (collectively, name and identifying information) on the Registry.

## Discussion

Doe argues various SORA provisions and accompanying regulations require us to answer the certified question in the negative. Keel contends these provisions and regulations require us to answer the question in the affirmative.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The plain language of a statute is the best evidence of legislative intent. *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 538, 725 S.E.2d 693, 697 (2012). "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute." *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581.

"[T]he Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation." *Brown v. Bi-Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003). "If the statute or regulation 'is silent or ambiguous with respect to the specific issue,' the court then must give deference to the agency's interpretation of the statute or regulation, assuming the interpretation is worthy of deference." *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 33, 766 S.E.2d 707, 717 (2014) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). However, where the plain language of the statute "is contrary to the agency's interpretation, the Court will reject the agency's interpretation." *Brown*, 354 S.C. at 440, 581 S.E.2d at 838. Accordingly, the Court will defer to an agency's interpretation of a statute or regulation unless it is "arbitrary, capricious, or manifestly contrary to the statute [or regulation]." *Kiawah*, 411 S.C. at 34-35, 766 S.E.2d at 718 (quoting *Chevron*, 467 U.S. at 844); *see Sierra Club v. S.C. Dep't of Health & Env't Control*, 426 S.C. 236, 257, 826 S.E.2d 595, 606 (2019) (declining to give regulatory deference to the Department of Health and Environmental Control's interpretation of "migration of water onto" because it ran "afoul of what [the Court] conclude[d] is the clear meaning of the phrase").

## I.  SORA Provisions

Section 23-3-400 of SORA provides,

The intent of [SORA] is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens. Notwithstanding this legitimate state purpose, these provisions are not intended to violate the guaranteed constitutional rights of those who have violated our nation's laws.

The sex offender registry will provide law enforcement with the tools needed in investigating criminal offenses. Statistics show that sex offenders often pose a high risk of re-offending. <u>Additionally</u>, law enforcement's efforts to protect communities, conduct investigations, and apprehend offenders who commit sex offenses are impaired by the lack of information about these convicted offenders who live within the law enforcement agency's jurisdiction.

S.C. Code Ann. § 23-3-400 (emphasis added).  Read plainly, section 23-3-400 tells us several things.  First, SORA's threshold purpose is to promote the public health, welfare, and safety of South Carolina citizens.  Second, information placed on the Registry provides law enforcement with the tools needed to investigate criminal offenses.  Third, statistics show "sex offenders often pose a high risk of re-offending."  Fourth, the emphasized word "additionally" enhances—but does not restrict—both the purpose of SORA (promoting the public health, welfare, and safety of South Carolina citizens) and the role of the Registry (providing law enforcement with tools necessary to investigate criminal offenses).  This Court has explained SORA exists to protect the public from sex offenders who may re-offend and to aid law enforcement in solving sex crimes.  *See, e.g.*, *In re Justin B.*, 405 S.C. 391, 405, 747 S.E.2d 774, 781 (2013); *State v. Walls*, 348 S.C. 26, 31, 558 S.E.2d 524, 526 (2002).

Section 23-3-400 must be read along with subsection 23-3-410(A), which provides:

The registry is under the direction of the Chief of the State Law Enforcement Division (SLED) and shall contain information the chief considers necessary to assist law enforcement in the location of persons convicted of certain offenses. SLED shall develop and operate the registry to: collect, analyze, and maintain information; make information available to every enforcement agency in this State and in other states; and establish a security system to ensure that only authorized persons may gain access to information gathered under this article.

S.C. Code Ann. § 23-3-410(A).

In a mix of mandate and discretion, subsection 23-3-410(A) provides the Registry "shall contain information the chief considers necessary to assist law enforcement in the location of persons convicted of certain offenses." *Id.* Subsection 23-3-410(A) further requires SLED to develop and operate the Registry by collecting, analyzing, and maintaining information and to make that information available to law enforcement agencies in South Carolina and other states. As noted below, section 23-3-420 directs SLED to promulgate regulations to implement SORA.

As explained above, section 23-3-400 reflects the General Assembly's intent to "promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens" by providing "law enforcement with the tools needed in investigating criminal offenses." One such tool is the bank of information that is to be collected, analyzed, maintained, and made available to all enforcement agencies in this State and in other states pursuant to subsection 23-3-410(A). The information can hardly be made available to other states if it is not maintained in South Carolina.

Both section 23-3-400 and subsection 23-3-410(A) are silent as to the ramifications of a sex offender moving from South Carolina to another state. We conclude South Carolina has a legitimate and fundamental interest in promoting the public health, safety, and welfare of its citizens, regardless of imaginary boundary lines between states. For example (and there are many), a sex offender who resides in and registers in South Carolina might move to Savannah, Georgia or Charlotte, North Carolina and not remain in South Carolina "for a total of thirty days during a twelve-month period." S.C. Code Ann. § 23-3-430(B). While that offender would not be deemed a resident of South Carolina for SORA purposes and would no longer be required to physically register, he or she could easily travel to and from South Carolina at convenient times for licit and illicit purposes. To summarily conclude a nonresident offender's information should be deleted from the Registry would ignore the purpose of SORA as stated in section 23-3-400.

Doe relies heavily upon subsection 23-3-430(A) to advance his argument that a nonresident offender's name and identifying information should be removed from the Registry. Subsection 23-3-430(A) requires any person "residing in the State of South Carolina" who has been convicted of an offense listed in subsection 23-3-430(C) to register as a sex offender.[3] S.C. Code Ann. § 23-3-430(A). Doe argues

---

[3] As previously noted, subsection 23-3-430(B) provides that for the purposes of SORA, "a person who remains in this State for a total of thirty days during a twelve-

subsection 23-3-430(A) indicates that if a nonresident offender is no longer required to physically register in South Carolina, the offender's name and identifying information should be deleted from the Registry. We disagree. Subsection 23-3-430(A) refers only to the physical act of registering; it does not require SLED to remove a nonresident offender's name and identifying information from the Registry. If the General Assembly chooses to amend SORA to achieve the result urged by Doe, it may do so. *See Hampton v. Haley*, 403 S.C. 395, 403, 743 S.E.2d 258, 262 (2013) (explaining the General Assembly has plenary power to make policy decisions "unless limited by some constitutional provision").

Our court of appeals has similarly—and correctly—refrained from construing SORA in a manner inconsistent with its plain meaning. In *Young v. Keel*, a sex offender argued he was no longer required to physically register in South Carolina because his underlying conviction had been expunged. 431 S.C. 554, 557, 848 S.E.2d 67, 68 (Ct. App. 2020). The court of appeals addressed the several ways in which a sex offender can be relieved of the registration requirement. Writing for the court of appeals, then-Judge Hill (now Justice Hill) noted:

> While the text of SORA does not speak to the effect an expungement has on the registry requirement, the text is not unclear or ambiguous. We are mindful that "statutory interpretation begins (and often ends) with the text of the statute in question. Absent an ambiguity, there is nothing for a court to construe, that is, a court should not look beyond the statutory text to discern its meaning." *Smith v. Tiffany*, 419 S.C. 548, 555-56, 799 S.E.2d 479, 483 (2017) (citations omitted). The text of § 23-3-430 plainly lists only three exceptions to the registry requirement, and we hold § 22-5-920 does not, by statutory osmosis, create a fourth for expungement.

*Id.* at 558, 848 S.E.2d at 69.

The sex offender in *Young* sought to be relieved from the physical act of registering. Interestingly, however, the "three exceptions to the registry requirement" discussed in *Young* are, by their very terms, vehicles for removing an offender's name and identifying information from the Registry, which is the relief

---

month period is a resident of this State." SLED Regulation 73-200(J) defines "resident" as "any person remaining in South Carolina for a period of twenty-eight (28) consecutive days," to include but not be limited to "earning a salary, attending school or college, recreation, visitation, and the like." Because SLED concedes Doe is not a resident of South Carolina, we do not address these different definitions.

sought by Doe. For example, subsection 23-3-430(E) provides, "SLED shall remove a person's name and any other information concerning that person from the sex offender registry" when the conviction is reversed, overturned, or vacated on appeal and final judgment to that effect has been rendered. Subsection 23-3-430(F) contemplates instances when an offender "may be removed from the registry" in the event of a pardon. Subsection 23-3-430(G) contemplates instances in which an offender may "be removed from the registry" in connection with a petition for a writ of habeas corpus or a motion for a new trial under Rule 29(b) of the South Carolina Rules of Criminal Procedure.

Doe argues *Young* does not apply to his request because the sex offender in *Young* was attempting to be relieved of the physical act of registering and was not attempting to have his name and identifying information removed from the Registry. We disagree. The SORA provisions cited in *Young* require the removal of the offender's name and identifying information from the Registry, which, again, <u>is</u> the relief sought by Doe.

In May of 2022, General Assembly enacted section 23-3-462, which added a fourth mechanism for the removal of a sex offender's name and identifying information from the Registry. Under section 23-3-462, "SLED shall remove the offender's name and identifying information from the sex offender registry" if the offender completes the requirements of section 23-3-462. Doe concedes he is not, at this time, entitled to relief under section 23-3-462.

We are persuaded by the rationale employed in *Young*. Section 23-3-462 and subsections 23-3-430(E), (F), and (G) set forth four scenarios in which a sex offender's name and identifying information can be removed from the Registry. Doe's nonresident status does not, "by statutory osmosis" or otherwise, create a fifth. *Young*, 431 S.C. at 558, 848 S.E.2d at 69. If the General Assembly desires to create additional methods for removal of an offender's name and identifying information from the Registry, it may do so. However, we will not strain the plain meaning of SORA to create an avenue for removal where none exists. *See Bryant v. City of Charleston*, 295 S.C. 408, 411, 368 S.E.2d 899, 900-01 (1988) ("[I]n construing a statute its words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation."). Doe also argues "the certified question only involves temporary clerical removal of names from the [Registry] who have no active duty to register in South Carolina." To that end, Doe argues he seeks only a "temporary clerical removal" of his name from the Registry and should he reside in South Carolina in the future, his obligation to register in South Carolina would resume. That argument is meritless, as it would require us to ignore the grant of discretion given to the Chief of SLED by the General

Assembly in subsection 23-3-410(A).  To do this, we would be engaging in a forced construction of SORA.

## II.    Regulations

In section 23-3-420, the General Assembly directed SLED to "promulgate regulations to implement the provisions of [SORA]."  We would certainly take a dim view of any applicable regulations that expand SLED's authority beyond that granted in SORA.  However, no regulations commit that evil, at least with respect to the certified question.  Regulation 73-210 contains information to be gathered by various state entities and reported to the sheriff of the county in which the sex offender will reside.   Regulation 73-220 prescribes procedures to be utilized by sheriffs' offices at the time of physical registration and re-registration.  These procedures ensure transmission of required information by sheriffs to SLED.  Regulation 73-240 provides "SLED will ensure that all information maintained in the Registry is as up-to-date and accurate as possible."  Regulation 73-260 lists twenty-three categories of identifying information that must be provided by the sex offender when registering.  None of these regulations require SLED to remove Doe's name and identifying information from the Registry.

Doe argues Regulation 73-250 entitles him to relief.  We disagree.  Regulation 73-250 contemplates a sex offender's move to either another county in South Carolina or another state.  Regulation 73-250(A) sets forth the responsibilities of county sheriffs when offenders move from one county to another.  If an offender moves to another county, the sheriff of the county from which the offender moved must place the offender on inactive status, and the sheriff of the county in which the offender now lives must enter the offender into the Registry "as a new entry."  S.C. Code Ann. Regs. 75-250(A)(1)(2).   If the offender moves to another state, Regulation 73-250(B) requires the sheriff of the county from which the offender moved to place the offender on inactive status and "notify the receiving state of the offender's relocation."  Regulation 73-250 merely sets forth the record-keeping duties of county sheriffs when a registered sex offender moves from their county to either another county in South Carolina or, as in the case of Doe, another state.  The placement of the nonresident offender on inactive status pursuant to 73-250(B) does not require SLED to remove the name and identifying information from the Registry.

## III.    Doe's Constitutional Arguments

Doe asks this Court to address several federal constitutional claims pending in this litigation before the district court.  Because these claims are beyond the scope of the certified question, we decline to address them.

## Conclusion

Provisions for removing a sex offender's name and identifying information from the Registry are set forth in section 23-3-462 and subsections 23-3-430(E), (F), and (G). None of these provisions apply to Doe's circumstances. The regulations promulgated by SLED neither expand SLED's authority beyond that granted by the General Assembly in SORA nor require SLED to remove Doe's name and identifying information from the Registry. We therefore answer the certified question, as amended, in the affirmative.

**CERTIFIED QUESTION ANSWERED.**

**BEATTY, C.J., KITTREDGE, FEW, JJ., and Acting Justice Kaye G. Hearn, concur.**