665 S.E.2d 645

**The STATE of South Carolina, Appellant,**

v.

**Reginald Craig SWEAT, Respondent.**

**The State of South Carolina, Appellant,**

v.

**Arthur Bryant, III, Respondent.**

**No. 4409.**

Court of Appeals of South Carolina.

Heard June 3, 2008.

Decided June 10, 2008.

Rehearing Denied Aug. 25, 2008.

368

Charles H. Sheppard and Rachel D. Erwin, both of Blythewood, for Appellant.

Richard L. Pearce, of Aiken, for Respondents.

Danny C. Crowe and R. Hawthorne Barrett, both of Columbia, for Amicus Curiae, Municipal Association of South Carolina.

ANDERSON, J.

The State appeals the dismissal of convictions of Reginald Craig Sweat and Arthur Bryant, III, for exceeding the statutory maximum gross vehicle weight. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

On February 14, 2006, Reginald Craig Sweat, a sanitation truck driver for the City of Aiken, was stopped and cited by a State Transport Police (hereafter STP) officer for exceeding the allowable gross vehicle weight for the 2005 Sterling Model LT9500, three-axle sanitation truck he was driving. The citation alleges the vehicle weighed 57,100 pounds. The officer claimed the allowable weight was 50,600 pounds, calculated as 46,000 pounds plus a ten percent scale tolerance of 4,600 pounds.

On April 10, 2006, a different STP officer cited Arthur Bryant, III, another driver for the City of Aiken, for driving the same sanitation truck in excess of the allowable gross vehicle weight. On this occasion, the truck weighed 56,900 pounds. The officer noted the allowable weight as 50,600 pounds.

A trial was held before an Aiken County Magistrate. The State and Respondents stipulated to the facts of the case. The drivers made a motion to dismiss both tickets alleging South Carolina Code Section 56–5–4140 permits them to operate the city's sanitation truck at a maximum gross vehicle weight of 66,000 pounds, i.e., a higher gross vehicle weight than the actual vehicle weight shown on the two citations. The magistrate issued two separate orders finding each driver guilty of violating the gross vehicle weight statute. The orders do not contain findings of fact or conclusions of law.

The drivers appealed their convictions to the Court of Common Pleas. The circuit court reversed the magistrate's orders and remanded the cases for entry of a not guilty verdict. The court's order articulates:

S.C.Code Section 56–5–4140 contains several sections which set forth the weight limits of trucks driving on South Carolina roads that are not in the interstate highway system.

Under Section 56–5–4140(1)(a)(2), the general weight limit provision, the gross weight for vehicles equipped with three axles is 46,000 pounds.

Several exceptions to this general rule for gross vehicle weights exist under this statute, however.

Under Section 56–5–4140(1)(b) trucks with three axles spaced 32 feet in any consecutive group allow the gross vehicle weight to top out at 60,000 pounds.

Another excepted group of trucks appears in Section 56–5–4140(2)(a). Under this provision, trucks˙ designated and constructed for special type work—*and the state* [sic] *has stipulated the City of Aiken garbage truck is such a truck*— are exempted from any axle spacing requirements, are limited to a maximum gross weight of 20,000 pounds per axle *plus scale tolerances.*

Under S.C.Code Section 56–5–4160, scale tolerances are set at ten percent.

Photos introduced to Magistrate Neal and this Court show the garbage truck to have three axles. A review of the tickets issued to Appellants show that the vehicle weights for Sweat's driving to have been 15,500 pounds for axle 1 and 41,600 pounds for axle 2 and 3 in total. When Bryant drove the truck, it weight [sic] in at 15,300 for axle 1; 21,200 for axle 2; and 20,400 for axle 3.

All of these weights were well within the statutorily-set maximum weight per axle of 22,000 pounds.

The State's position that only the general provision under Section 56–5–4140(1)(a)(2) apply to this truck is misplaced.

To adopt the State's reading of this statute would contravene state law of statutory interpretation. When reviewing a statute, this Court must follow specific provisions over general language in the statute.

In these present cases, applying the specific statutory provisions allow for a garbage truck, as a vehicle constructed for a special type of work, means it can weigh in at up to 22,000 pounds per axle. Both Appellants were well within these limits as appears from the uncontraverted [sic] evidence in this record.

In the order denying the State's motion to alter or amend judgment pursuant to Rule 59(e), SCRCP, the circuit court reiterated and further explained the reasoning of its prior order:

Respondent has stipulated that the City of Aiken garbage truck driven by these two Appellants is a truck "... designed and constructed for special type work ..." under the provisions of Section 56–5–4140(2)(a), S.C.Code Ann. (2005).

Trucks subject to this exception to the state gross vehicle weight limits are not required to follow the axle spacing requirements of 56–5–4140(b). Furthermore, these specially-built trucks also are allowed a weight of 20,000 pounds per axle, plus a 10% scale tolerance, not to exceed the maximum weight allowed by this section for the appropriate number of axles, irrespective of the spacing distance between axles, plus allowable scale tolerances. *See* 56–5–4140(2)(a) and table contained in 56–5–4140(1)(b).

In one instance, this truck driven by Sweat, with a single axle under the cab, and a tandem axle under its payload, weighed a total of 57,100 pounds [15,500 for the cab axle plus 41,600 lbs for payload axles]. When driven by Arthur Bryant, III, this truck weighed a total of 56,900 pounds [15,300 cab axle plus 41,600 for payload axles]. In both instances, the truck was well below the statutory maximum gross vehicle weight for a three-axle, specially built truck under 56–5–4140(2)(a):

| | |
|---|---|
| 20,000 lbs for each axle × three axles: | 60,000 pounds |
| PLUS | |
| Scale tolerances of 10% (56-5-4160(A)): for each axle × three axles | 6,000 pounds |
| TOTAL ALLOWABLE GROSS WEIGHT FOR THIS SPECIALLY–BUILT TRUCK: | 66,000 pounds |

Section 56–5–4140(2)(a) is the applicable specific statutory exception to the general gross weight limits contained in 56–

5–4140(1)(a)(2). Therefore, charging these two drivers with purportedly exceeding allowable gross vehicle weights at readings of 57,100 and 56,900 pounds was improper and their convictions cannot stand.

## STANDARD OF REVIEW

■ The issue of interpretation of a statute is a question of law for the court. *Univ. of S. California v. Moran,* 365 S.C. 270, 275, 617 S.E.2d 135, 137 (Ct.App.2005); *see also Catawba Indian Tribe of South Carolina v. State of South Carolina,* 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007), *cert. denied,* Oct. 1, 2007; *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995).

Section 14–3–330 of the South Carolina Code (Supp.2006) vests the South Carolina Supreme Court with "appellate jurisdiction for correction of errors of law in law cases...." Section 14–8–200(a) of the South Carolina Code (Supp.2007) provides the Court of Appeals "shall apply the same scope of review that the Supreme Court would apply in a similar case." Citing both section 14–3–330 and South Carolina Constitution, article V, section 5, the supreme court has held an appellate court may decide novel questions of law with "no particular deference to the lower court." *Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 134, 638 S.E.2d 650, 656 (2006); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000); *Thompson ex rel. Harvey v. Cisson Const. Co.,* 377 S.C. 137, 659 S.E.2d 171, 179 (Ct.App.2008).

■■ "When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts. In such cases, the appellate court is not required to defer to the trial court's legal conclusions." *Nationwide Mut. Ins. Co. v. Prioleau,* 359 S.C. 238, 242, 597 S.E.2d 165, 167 (Ct.App.2004) (quotation and citation omitted). When addressing novel question of law, the appellate court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of this state and the court's sense of law, justice, and right. *Croft v. Old Republic Ins. Co.,* 365 S.C. 402, 408, 618 S.E.2d 909, 912 (2005).

In a case raising a novel question of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 718–19 (2000). The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons. *Buist v. Huggins,* 367 S.C. 268, 276, 625 S.E.2d 636, 640 (2006). In *Brown v. Bi–Lo, Inc.,* 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003), our supreme court stated:

> We recognize the Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation. Nevertheless, where, as here, the plain language of the statute is contrary to the agency's interpretation, the Court will reject the agency's interpretation.

*Id.* (Citation omitted).

### *LAW/ANALYSIS*

### I. Statutory Construction

The cardinal rule of statutory interpretation is to determine the intent of the legislature. *Bass v. Isochem,* 365 S.C. 454, 459, 617 S.E.2d 369, 377 (Ct.App.2005); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken,* 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003); *Smith v. S.C. Ins. Co.,* 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App.2002); *see also Gordon v. Phillips Utils., Inc.,* 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998); *State v. Morgan,* 352 S.C. 359, 365–66, 574 S.E.2d 203, 206 (Ct.App.2002); *State v. Hudson,* 336 S.C. 237, 246, 519 S.E.2d 577, 581 (Ct.App.1999). "Once the legislature has made [a] choice, there is no room for

the courts to impose a different judgment based upon their own notions of public policy." *S.C. Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App. 1989).

The legislature's intent should be ascertained primarily from the plain language of the statute. *State v. Landis,* 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct.App.2004); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996). The language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Mun. Ass'n of S.C. v. AT&T Commc'ns of S. States, Inc.,* 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004); *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; Hudson, 336 S.C. at 246, 519 S.E.2d at 582.

■■ When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. *Miller v. Aiken,* 364 S.C. 303, 307, 613 S.E.2d 364, 366 (2005); *Carolina Power & Light Co. v. City of Bennettsville,* 314 S.C. 137, 139, 442 S.E.2d 177, 179 (1994); *Jones v. State Farm Mut. Auto. Ins. Co.,* 364 S.C. 222, 231, 612 S.E.2d 719, 723 (Ct.App.2005). If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.,* 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003); *Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); *see also City of Camden v. Brassell,* 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Bayle v. S.C. Dep't of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 740 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *Durham v. United Cos. Fin. Corp.,* 331 S.C. 600, 604, 503 S.E.2d 465, 468 (1998); *Adkins v. Comcar Indus., Inc.,* 323 S.C. 409, 411, 475 S.E.2d 762, 763

(1996); *Worsley Cos. v. S.C. Dep't of Health & Envtl. Control,* 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); *see also Timmons v. S.C. Tricentennial Comm'n,* 254 S.C. 378, 402, 175 S.E.2d 805, 817 (1970) (observing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Vaughn v. Bernhardt,* 345 S.C. 196, 198, 547 S.E.2d 869, 870 (2001); *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000); *Bayle,* 344 S.C. at 122, 542 S.E.2d at 739. *See also Shealy v. Doe,* 370 S.C. 194, 199–200, 634 S.E.2d 45, 48 (Ct.App.2006).

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan,* 352 S.C. at 367, 574 S.E.2d at 207; *see also Wade v. Berkeley County,* 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. Hudson, 336 S.C. at 247, 519 S.E.2d at 582; *Brassell,* 326 S.C. at 561, 486 S.E.2d at 495; *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck,* 330 S.C. 371, 376, 498 S.E.2d 894, 896 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins,* 352 S.C. 162, 166, 573 S.E.2d 783, 785 (2002); *Adams v. Texfi Indus.,* 320 S.C. 213, 217, 464 S.E.2d 109, 112 (1995); *Brassell,* 326 S.C. at 560, 486 S.E.2d at 494.

A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *See Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 621, 611 S.E.2d 297, 301 (Ct.App.2005); *see also Georgia–Carolina Bail Bonds,* 354 S.C. at 22, 579 S.E.2d at 336 ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). The real purpose and intent of the lawmakers will prevail over the literal import

of the words. *Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992).

Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. *Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000); *Kiriakides v. United Artist Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *See Liberty Mut. Ins. Co.*, 363 S.C. at 622, 611 S.E.2d at 302; *see also Mid–State Auto Auction v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996) (stating that in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole).

When interpreting a statute, courts must presume the legislature did not intend to do a futile act. *Proctor v. Dep't of Health and Envtl. Control*, 368 S.C. 279, 311, 628 S.E.2d 496, 513 (Ct.App.2006). The legislature is presumed to intend that its statutes accomplish something. *State v. Long*, 363 S.C. 360, 364, 610 S.E.2d 809, 812 (2005). "A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous...." *Matter of Decker*, 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995) (citing 82 C.J.S. *Statutes* § 346). *See also Pike v. S.C. Dep't of Transp.*, 332 S.C. 605, 618, 506 S.E.2d 516, 523 (Ct.App. 1998), *aff'd as modified*, 343 S.C. 224, 540 S.E.2d 87 (2000).

## II. Section 56–5–4140

Section 56–5–4140 addresses the maximum gross weight of vehicles. It states:

(1)(a) The gross weight of a vehicle or combination of vehicles, operated or moved upon any interstate, highway or section of highway shall not exceed:

(1) Single-unit vehicle with two axles .................... 35,000 lbs.

(2) Single-unit vehicle with three axles
.................. 46,000 lbs.

(3) Single-unit vehicle with four axles
.................... 63,500 lbs.

Except, on the interstate, vehicles must meet axle spacing requirements and corresponding maximum overall gross weights, not to exceed 63,500 lbs., in accordance with the table in (b) plus tolerances.

(4) Single unit vehicle with five or more axles ....... 65,000 lbs.

Except, on the interstate, vehicles must meet axle spacing requirements and corresponding maximum overall gross weights, not to exceed 65,000 lbs., in accordance with the table in (b) plus tolerances.

(5) Combination of vehicles with three axles ......... 50,000 lbs.

(6) Combination of vehicles with four axles .......... 65,000 lbs.

(7) Combination of vehicles with five or more axles .......... 73,280 lbs.

The gross weight imposed upon any highway or section of highway other than the interstate by two or more consecutive axles in tandem articulated from a common attachment to the vehicle and spaced not less than forty inches nor more than ninety-six inches apart shall not exceed thirty-six thousand pounds, and no one axle of any such group of two or more consecutive axles shall exceed the load permitted for a single axle. The load imposed on the highway by two consecutive axles, individually attached to the vehicle and spaced not less than forty inches nor more than ninety-six inches apart, shall not exceed thirty-six thousand pounds and no one axle of any such group of two consecutive axles shall exceed the load permitted for a single axle.

The ten percent enforcement tolerance specified in Section 56–5–4160 applies to the vehicle weight limits specified in this section except, the gross weight on a single axle operated on the interstate may not exceed 20,000 pounds, including all enforcement tolerances; the gross weight on a tandem axle operated on the interstate may not exceed 35,200 pounds, including all enforcement tolerances; and

the overall gross weight for vehicles operated on the interstate may not exceed 75,185 pounds, including all enforcement tolerances except as provided in (b).

(b) Vehicles with an overall maximum gross weight in excess of 75,185 pounds may operate upon any highway or section of highway in the Interstate System up to an overall maximum of 80,000 pounds in accordance with the following:

The weight imposed upon the highway by any group of two or more consecutive axles may not, unless specially permitted by the Department of Public Safety exceed an overall gross weight produced by the application of the following formula:

$$W = 500 (LN/N{-}1 + 12N + 36)$$

In the formula W equals overall gross weight on any group of two or more consecutive axles to the nearest 500 pounds, L equals distance in feet between the extreme of any group of two or more consecutive axles, and N equals number of axles in the group under consideration.

As an exception, two consecutive sets of tandem axles may carry a gross load of 68,000 pounds if the overall distance between the first and last axles of the consecutive sets of tandem axles is 36 feet or more. The formula is expressed by the following table:

| Distance in feet between the extremes of any group of 2 or more consecutive axles | Maximum load in pounds carried on any group of 2 or more consecutive axles | | | | | |
|---|---|---|---|---|---|---|
| | 2 axles | 3 axles | 4 axles | 5 axles | 6 axles | 7 axles |
| 4 | 35,200 | | | | | |
| 5 | 35,200 | | | | | |
| 6 | 35,200 | | | | | |
| 7 | 35,200 | | | | | |
| 8 and less | 35,200 | 35,200 | | | | |
| more than 8 | 38,000 | 42,000 | | | | |
| 9 | 39,000 | 42,500 | | | | |
| 10 | 40,000 | 43,500 | | | | |
| 11 | | 44,000 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 12 | 45,000 | 50,000 | | | |
| 13 | 45,500 | 50,500 | | | |
| 14 | 46,500 | 51,500 | | | |
| 15 | 47,500 | 52,000 | | | |
| 16 | 48,000 | 52,500 | 58,000 | | |
| 17 | 48,500 | 53,500 | 58,500 | | |
| 18 | 49,500 | 54,000 | 59,000 | | |
| 19 | 50,500 | 54,500 | 60,000 | | |
| 20 | 51,000 | 55,500 | 60,500 | 66,000 | |
| 21 | 51,500 | 56,000 | 61,000 | 66,500 | |
| 22 | 52,500 | 56,500 | 61,500 | 67,000 | |
| 23 | 53,000 | 57,500 | 62,500 | 68,000 | |
| 24 | 54,000 | 58,000 | 63,000 | 68,500 | 74,000 |
| 25 | 54,500 | 58,500 | 63,500 | 69,000 | 74,500 |
| 26 | 55,500 | 59,500 | 64,000 | 69,500 | 75,000 |
| 27 | 56,000 | 60,000 | 65,000 | 70,000 | 75,500 |
| 28 | 57,000 | 60,500 | 65,500 | 71,000 | 76,500 |
| 29 | 57,500 | 61,500 | 66,000 | 71,500 | 77,000 |
| 30 | 58,500 | 62,000 | 66,500 | 72,000 | 77,500 |
| 31 | 59,000 | 62,500 | 67,500 | 72,500 | 78,000 |
| 32 | 60,000 | 63,500 | 68,000 | 73,000 | 78,500 |
| 33 | | 64,000 | 68,500 | 74,000 | 79,000 |
| 34 | | 64,500 | 69,000 | 74,500 | 80,000 |
| 35 | | 65,500 | 70,000 | 75,000 | |
| 36 | | 68,000 | 70,500 | 75,500 | |
| 37 | | 68,000 | 71,000 | 76,000 | |
| 38 | | 68,000 | 71,500 | 77,000 | |
| 39 | | 68,000 | 72,500 | 77,500 | |
| 40 | | 68,500 | 73,000 | 78,000 | |

| | | | |
|---|---|---|---|
| 41 | 69,500 | 73,500 | 78,500 |
| 42 | 70,000 | 74,000 | 79,000 |
| 43 | 70,500 | 75,000 | 80,000 |
| 44 | 71,500 | 75,500 | |
| 45 | 72,000 | 76,000 | |
| 46 | 72,500 | 76,500 | |
| 47 | 73,500 | 77,500 | |
| 48 | 74,000 | 78,000 | |
| 49 | 74,500 | 78,500 | |
| 50 | 75,500 | 79,000 | |
| 51 | 76,000 | 80,000 | |
| 52 | 76,500 | | |
| 53 | 77,500 | | |
| 54 | 78,000 | | |
| 55 | 78,500 | | |
| 56 | 79,500 | | |
| 57 | 80,000 | | |

(2) Except on the interstate highway system:

(a) Dump trucks, dump trailers, trucks carrying agricultural products, concrete mixing trucks, fuel oil trucks, line trucks, and trucks designated and constructed for special type work or use are not required to conform to the axle spacing requirements of this section. However, the vehicle is limited to a weight of twenty thousand pounds for each axle plus scale tolerances and the maximum gross weight of these vehicles may not exceed the maximum weight allowed by this section for the appropriate number of axles, irrespective of the distance between axles, plus allowable scale tolerances.

(b) Concrete mixing trucks which operate within a fifteen-mile radius of their home base are not required to conform to the requirements of this section. However, these vehicles are limited to a maximum load of the rated capacity of the concrete mixer, the true gross load not to exceed sixty-

six thousand pounds. All of these vehicles shall have at least three axles each with brake-equipped wheels.

(c) Well-drilling, boring rigs, and tender trucks are not required to conform to the axle spacing requirements of this section. However, the vehicle is limited to seventy thousand pounds gross vehicle weight and twenty-five thousand pounds for each axle plus scale tolerances.

S.C.Code Ann. § 56–5–4140 (2006).

Section 56–5–4160(A) states, in part: "In determining whether the limits established by Section 56–5–4130 or 56–5–4140 have been exceeded, the scaled weights of the gross weight of vehicles and combinations of vehicles are considered to be not closer than ten percent to the true gross weight, except as otherwise provided in Section 56–5–4140." S.C.Code Ann. § 56–5–4160(A) (Supp.2007).

The State has conceded that the drivers were operating "trucks designated and constructed for special type work" as defined in subsection (2)(a) of section 56–5–4140. The only remaining question is how to interpret the language of this subsection. It permits special use trucks to weigh 20,000 pounds per axle plus the ten percent scale tolerance. This totals 22,000 pounds per axle or 66,000 total pounds for three-axle vehicles such as the sanitation truck at issue here. This is the only reasonable way to interpret this language.

The State focuses on the second part of subsection (2)(a) and argues it incorporates the general standard of subsection (1)(a). The State's position is incorrect because it would render subsection (2)(a) meaningless. If we accepted the State's interpretation, the maximum allowable weight for a three-axle vehicle would be 46,000 pounds plus scale tolerances totaling 50,600 pounds, regardless of the special use exception found in subsection (2)(a). The State's interpretation strips the special use vehicle exception of any real force or meaning. Under the State's theory, the general rule in (1)(a) would always apply and the exception in (2)(a) would be pointless. The General Assembly obviously intended the exception to have some efficacy, or the legislature would not have enacted it into law.

The circuit court's interpretation properly honors and harmonizes both subsections. Subsection (1)(a) sets the general

per-axle standard for vehicles in South Carolina. Subsection (2)(a) provides a different standard for specific types of vehicles when they are not operated on the interstate highway system. Subsection (2)(a) does precisely what an exception is intended to do: it identifies a category to which the general rule does not apply. The court's interpretation recognizes the common interplay between general rules and their statutorily created exceptions.

The State overlooks the fact that subsection (2)(a) carves out an exception that applies only to certain specified types of vehicles, but an understanding of this point is vital to a proper reading of the statute. The State's interpretation raises the question: why have subsection (2)(a) at all if subsection (1)(a) always controls? The answer is that subsection (2)(a) exists to create a different weight allowance for "trucks designated and constructed for special type work." Neither subsection "controls" the other. They work together to set forth the different standards for regular and special use vehicles. This is the only way to harmonize the two subsections and give effect to both. Under the rules of statutory interpretation, it was proper and indeed necessary for the circuit court to do so.

The State focuses on a perceived inconsistency in the use of the words "this section" in subsection (2)(a). According to the State, the phrase "maximum weight allowed by this section" can only be a reference back to the general standard of subsection (1)(a). We rule that the phrase "this section" refers to section 56-5-4140 *as a whole*. This includes subsection (1)(b), which presents a formula for increased weight allowances based on the number of axles and the distances between them. The maximum allowable weight for a three-axle vehicle under subsection (1)(b) is 80,000 total pounds. This is the largest allowable weight found anywhere in section 56-5-4140.

When one reads the phrase "this section" in the clause "... and the maximum gross weight of these vehicles may not exceed the maximum weight allowed by this section for the appropriate number of axles, irrespective of the distance between axles, plus allowable scale tolerances" in subsection (2)(a) to refer to the entire section of the Code, a clear and consistent meaning emerges. Special use vehicles can exceed

the general rule requirements of subsection (1)(a), but the exception in no event allows those vehicles to surpass the maximum figures found in subsection (1)(b). The legislature used the additional clause in subsection (2)(a) simply to clarify this point.

The State's interpretation honors only subsection (1)(a), leaving subsection (2)(a) without any force. In affirming the circuit court's order, we find all three subsections coexist, each serving specific, complementary functions.

Had the legislature intended subsection (2)(a) to be an exception only as to tandem axle vehicles, as the State advances, the General Assembly could have easily included language expressly limiting the nature of the exception contained in subsection (2)(a). The statute is lacking any such verbiage.

 It is true that agencies charged with enforcing statutes usually receive deference from the courts as to their interpretation of those laws. *Brown v. Bi–Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003). Yet where "the plain language of the statute is contrary to the agency's interpretation, the Court will reject the agency's interpretation." Id. (citing *Brown v. S.C. Dep't of Health and Envtl. Control*, 348 S.C. 507, 560 S.E.2d 410 (2002); *Richland Co. Sch. Dist. Two v. S.C. Dep't of Educ.*, 335 S.C. 491, 517 S.E.2d 444 (Ct.App. 1999)). In this case, the State is not entitled to any deference in its interpretation because the plain language of section 56–5–4140(2)(a) refutes the State's position. The circuit court was not bound to accept the State's interpretation of the statute. This Court is free to read the statute based on its plain language without deference to the State's position.

The circuit court properly interpreted section 56–5–4140 based on the clear wording of the statute. By its express terms, subsection (2)(a) allows special use vehicles like the one involved in these cases to weigh up to 22,000 pounds per axle. This is an intentional exception to the general rule of subsection (1)(a). Subsection (1)(b), and not the general rule, provides the overall maximum weight limitations for special use vehicles. This interpretation honors the plain meaning of the statute, and it gives force and effect to all the subsections. The State's proposed interpretation, which elevates subsection (1)(a) over all others and effectively renders subsection (2)(a)

meaningless, flies in the face of the plain language of the statute.

## III. Public Policy

The State's claim that the circuit court's interpretation of the statute would allow for grossly overweight vehicles is without merit. According to the State, reading subsection (2)(a) as allowing up to 22,000 pounds per axle would lead to vehicles in excess of 100,000 pounds on South Carolina's roads. The State has not demonstrated that affirming the circuit court will adversely affect the state's roads or public safety. The State's argument overlooks subsection (1)(b). This subsection establishes a maximum total weight for all vehicles, including special use vehicles like the one involved in this case. The special use exception in subsection (2)(a) references and incorporates the statute's overall weight limitations. The maximum total weight in subsection (1)(b) is 80,000 pounds. With the ten percent scale tolerance, the maximum weight of a vehicle on South Carolina's roads is 88,000 pounds. This puts to rest the State's fears of trucks weighing more than 100,000 pounds on South Carolina's roads. The State is able to cite drivers of vehicles over 88,000 pounds under the circuit court's interpretation of the statute.

To the extent any policy considerations are implicated, they support the circuit court's ruling. The legislature obviously determined there was a legitimate reason to create separate, higher weight allowances for special use vehicles. One purpose for this special category is to permit larger loads in order to limit the trips these vehicles are required to make. The State's interpretation would prevent sanitation trucks from hauling full loads and require them to make more trips to and from the landfill. This would result in increased fuel costs passed on to the taxpayers. The legislature recognized that sanitation trucks and other special use vehicles are designed and built to handle heavier loads safely to reduce the number of trips per truck.

There is nothing in the statute to indicate the legislature intended to place the standard limitations on sanitation trucks and other special use vehicles. The existence of the special

use exception suggests the legislature wanted to achieve the opposite result. The circuit court's decision honors that goal.

## CONCLUSION

The position articulated by the State in regard to the body of the statute and the exception is quintessential academic statutory colliquefaction. The conflation of the base of the statute and the exception emasculates the separate efficacy intended by the General Assembly in adding the exception.

Accordingly, the order of the circuit court is

**AFFIRMED.**

HUFF and KITTREDGE, JJ., concur.