733 S.E.2d 903

**SAVANNAH RIVERKEEPER, South Carolina Coastal Conservation League, South Carolina Wildlife Federation, Conservation Voters of South Carolina, and the Savannah River Maritime Commission, Petitioners,**

v.

**The SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Respondent.**

Appellate Case No. 2012–209027.

No. 27182.

Supreme Court of South Carolina.

Heard June 5, 2012.

Decided Nov. 2, 2012.

C. Mitchell Brown and Allen Mattison Bogan, of Nelson Mullins Riley & Scarborough, of Columbia, for Petitioner Savannah River Maritime Commission, Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Deputy Attorney General Robert D. Cook, and Assistant Attorney General Parkin Hunter, all of Columbia, for Petitioner Savannah River Maritime Commission, Frank S. Holleman, III, James Blanding Holman, IV, Christopher Kaltman DeScherer, and Sally Corbette Newman, all of Southern

Environmental Law Center, of Charleston, for Petitioner Savannah Riverkeeper, et al.

Jacquelyn Sue Dickman and John Harleston, both of Columbia, for Respondent SCDHEC.

Justice PLEICONES.

Petitioners Savannah Riverkeeper, South Carolina Coastal Conservation League, South Carolina Wildlife Federation, and Conservation Voters of South Carolina (collectively, Conservation Groups) petitioned this Court to hear this matter in our original jurisdiction to determine whether the South Carolina Department of Health and Environmental Control (DHEC) acted illegally and usurped the authority of the Savannah River Maritime Commission (the Commission) when it negotiated an agreement with the U.S. Army Corps of Engineers (the Corps) and the Georgia Ports Authority (GPA) before issuing a 401 Water Quality Certification (the Certification or the 401 Certification) requested for the proposed Savannah Harbor Expansion Project (SHEP). The Court granted the petition. We find that DHEC's action contravened the plain language of S.C.Code Ann. § 54–6–10 (2007).

## FACTS

The U.S. Army Corps of Engineers, Savannah District, initiated the Savannah Harbor Expansion Project in order to dredge and deepen the navigation channel in the Savannah River to facilitate its use by ocean-going vessels traveling to and from the Port of Savannah. Under Section 401 of the federal Clean Water Act, the Corps was required to seek certification from the appropriate South Carolina authority that the SHEP complied with state water quality standards.

The Corps applied to DHEC for the 401 Certification and a Construction in Navigable Waters permit (the Permit) on November 15, 2010, as well as for a Coastal Zone Management Act consistency determination. The Savannah River Maritime Commission, an entity created by S.C.Code Ann. § 54–6–10 (2007), submitted comments to DHEC opposing approval of the Corps's application for the Certification, Permit, and consistency determination. On September 30, 2011, DHEC issued a notice of decision proposing to deny the Certification because a staff assessment had determined that the SHEP did

not meet South Carolina's water quality standards. The notice of decision appended the staff assessment.

Subsequently, DHEC staff, the Corps, and GPA negotiated and entered into an agreement (the Agreement) addressing the grounds for denial identified by DHEC staff as detailed in the assessment. On November 15, 2011, the DHEC Board issued the § 401 Certification, adopting the Agreement as part of the Certification.

The § 401 Certification also served as approval of the Permit pursuant to 1 S.C.Code Ann. Regs. 19–450.3(G) (2011) and 25A S.C.Code Ann. Regs. 61–101(A)(9) (Supp.2011).[1] In December 2011, Conservation Groups and the Commission filed requests for contested case review with the Administrative Law Court (ALC), seeking review of the decision on both procedural and substantive grounds. That matter is pending in the ALC. In March 2012, Conservation Groups filed a Motion for Original Jurisdiction with this Court, asking the Court to rule on the question whether DHEC violated § 54–6–10 when it negotiated with and entered into an agreement with the Corps and GPA in the course of issuing the 401 Certification and in authorizing the Corps to conduct construction in navigable waters. DHEC consented to the request. This Court granted the petition. The Commission sought to intervene as a Respondent and was permitted to intervene as a Petitioner.

## ISSUE

Did DHEC's action in issuing the 401 Certification contravene § 54–6–10?

## DISCUSSION

### I

■ Petitioners contend that DHEC contravened § 54–6–10 in two respects: when it negotiated and entered into the

---

1. When a § 401 Certification is issued, no separate permit for construction in navigable waters is required. Instead, the 401 Certification serves as the construction permit. Before DHEC may issue the permit, however, the staff reviewing the certification application is "required to coordinate with the Construction in Navigable Waters Permitting staff to insure" that the regulatory requirements for the construction permit are met. 1 S.C.Code Ann. Regs. 19–450.3(G).

Agreement with the Corps and GPA that provided the basis for its issuance of the 401 Certification and when it effectively granted the Permit. We agree.

Section 54–6–10 establishes the Commission, in relevant part as follows:

(A) [A] commission to be known as the Savannah River Maritime Commission is hereby established to represent this State in all matters pertaining to the navigability, depth, dredging, wastewater and sludge disposal, and related collateral issues in regard to the use of the Savannah River as a waterway for ocean-going container or commerce vessels. The commission as an instrumentality of this State is empowered to negotiate on behalf of the State of South Carolina and enter into agreements with the State of Georgia, the United States Army Corps of Engineers, and other involved parties in regard to the above which bind the State of South Carolina[.]

. . .

(F) Except as provided below, nothing in this section shall supersede the authority of other state agencies, departments, or instrumentalities including the Department of Natural Resources, the Department of Health and Environmental Control, or the State Ports Authority to exercise all powers, duties, and functions within their responsibilities as provided by law. However, on an interstate basis and specifically in regard to the State of Georgia, the responsibilities granted to the Savannah River Maritime Commission in this joint resolution supersede any other concurrent responsibilities of a particular state agency or department. Any requirements for permitting and constructing new terminal facilities on the Savannah River in Jasper County are declared not to be the responsibility of this commission, except as they may relate to this state's responsibility for the navigability or depth of the South Carolina portion of the Savannah River.

"The primary rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Gilstrap v. South Carolina Budget and Control Bd.,* 310 S.C. 210, 213, 423

S.E.2d 101 (1992). "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute." *Hodges v. Rainey,* 341 S.C. 79, 83, 533 S.E.2d 578, 581 (2000). "If the statute is ambiguous, however, courts must construe the terms of the statute." *Town of Mt. Pleasant v. Roberts,* 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). "A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *Id.*

The plain language of the statute gives the Commission the authority "to represent this State *in all matters* pertaining to the navigability, depth, dredging, wastewater and sludge disposal, *and related collateral issues* in regard to the use of the Savannah River as a waterway for ocean-going container or commerce vessels." § 54–6–10(A) (emphasis added). The Commission is specifically "empowered to negotiate on behalf of the State of South Carolina and enter into agreements with the State of Georgia, the United States Army Corps of Engineers, and other involved parties." *Id.*

Moreover, the Commission is given not only the authority but the "responsibility" to represent the state, a responsibility that "supersede[s] any other concurrent responsibilities of a particular state agency" to represent South Carolina in all matters pertaining to dredging of the Savannah River for navigation by oceangoing container and commerce vessels, and in related collateral issues. § 54–6–10(F). Given this language, we find the conclusion inescapable that the grant of authority was exclusive.

DHEC argues that the term "represent," interpreted in the context of the purpose of the Act, is limited to activities necessary for the development of the Jasper County terminal facilities, largely relying on the Act's title.[2] However, an

---

2. The title the Act reads as follows:

A JOINT RESOLUTION TO DIRECT THE STATE PORTS AUTHORITY TO CONTINUE AND BRING TO ITS EARLIEST CONCLUSION THE CONDEMNATION ACTION IT HAS BEGUN INVOLVING APPROXIMATELY ONE THOUSAND EIGHT HUNDRED ACRES IN JASPER COUNTY NEEDED TO DEVELOP NEW TERMINAL FACILITIES; TO PROVIDE THAT THE POWER AND AUTHORITY OF JASPER COUNTY TO UNDERTAKE ANY CONDEMNATION ACTION REGARDING THIS APPROXIMATELY ONE THOUSAND

inquiry into the purpose of the Act arises only if the plain language is ambiguous. *Garner v. Houck,* 312 S.C. 481, 486, 435 S.E.2d 847, 849 (1993) (title of statute "cannot undo or limit what the text makes plain"). In our view, there is no ambiguity in the text of § 54–6–10.

The Corps's proposed dredging of the Savannah River for purposes of navigation by ocean-going commerce and container vessels clearly implicates the statute's grant of responsibility and exclusive authority. Moreover, it was the impact of SHEP dredging in the South Carolina portion of the Savannah River that created the Corps's obligation to obtain the 401 Certification. Pursuant to § 54–6–10, the Commission has exclusive authority to represent the state in all matters pertaining to navigability and dredging of the Savannah River for use by ocean-going container and commerce vessels.

The plain language of § 54–6–10 gave the Savannah River Maritime Commission the responsibility and exclusive authority to represent South Carolina in all matters pertaining or collaterally related to dredging in the Savannah River for purposes of navigation by ocean-going container or commerce vessels, and 401 Certification for the SHEP fell within the scope of that authority. Thus, we find that DHEC acted in contravention of § 54–6–10 when it issued the 401 Certification.

---

EIGHT HUNDRED ACRES IN JASPER COUNTY OR ANY OTHER CONDEMNATION ACTION IN REGARD TO THE DEVELOPMENT OF TERMINAL FACILITIES IN JASPER COUNTY IS SUSPENDED FOR A PERIOD OF THREE YEARS FROM THE EFFECTIVE DATE OF THIS JOINT RESOLUTION; TO DIRECT THE STATE PORTS AUTHORITY TO CONTINUE AND COMPLETE CERTAIN OTHER ACTIONS BEGUN BEFORE THE EFFECTIVE DATE OF THIS JOINT RESOLUTION IN REGARD TO THESE NEW TERMINAL FACILITIES; TO DIRECT THE STATE PORTS AUTHORITY TO BEGIN SPECIFIC NEW UNDERTAKINGS WITHIN A STIPULATED TIME FRAME UPON FINAL CONCLUSION INCLUDING ALL APPEALS OF THE ABOVE CONDEMNATION ACTION, TO ESTABLISH THE SAVANNAH RIVER MARITIME COMMISSION AND PROVIDE FOR ITS MEMBERSHIP, FUNCTIONS, DUTIES, AND RESPONSIBILITIES, AND TO ESTABLISH THE JASPER COUNTY PORT FACILITY INFRASTRUCTURE FUND AND FOR THE USE OF MONIES IN THE FUND.
Act No. 56, 2007 Acts 181 (H.B. 3505).

## II

The majority finds that DHEC "acted" for purposes of the state certification requirement of the Clean Water Act. This question is not at issue. Moreover, the Corps and GPA are not parties to this case. *See Spanish Wells Property Ass'n v. Board of Adjustment*, 295 S.C. 67, 367 S.E.2d 160 (1988) (rule that permittee is necessary party in appeal of action challenging issuance of building permit serves judicial economy by ensuring that permittee will be bound if permit approval is reversed); S.C. Const. art. I, § 22 (2009) ("No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; ... nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review."); *Ross v. Medical University of South Carolina*, 328 S.C. 51, 68, 492 S.E.2d 62, 71 (1997) ("We have interpreted [article I, section 22 of the South Carolina Constitution] as specifically guaranteeing persons the right to notice and an opportunity to be heard by an administrative agency, even when a contested case under the APA is not involved."); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Likewise, the majority reaches the questions whether DHEC's final decision was rendered a nullity and whether the notice of proposed decision became a final agency decision even though these questions have not been raised to us and a necessary party, the permit applicant, is not before us. I would not reach these questions without affording the appropriate parties an opportunity to be heard, and thus do not join that portion of the majority opinion.

TOAL, C.J., concurring in part and dissenting in part in a separate opinion in which BEATTY and HEARN, JJ., concur. KITTREDGE, J., dissenting in a separate opinion.

Chief Justice TOAL, concurring in part and dissenting in part.

I write for a majority of this Court in stating we could not agree more with Justice Pleicones's conclusion in Part I of

his concurring and dissenting opinion that DHEC acted on the Certification requested for the SHEP.[3] However, we do not agree with Part II of his opinion. We take the analysis one step further and find that because the Board acted in contravention of section 54–6–10 of the South Carolina Code when it negotiated the Agreement with the Corps and the GPA before issuing the Certification requested for the SHEP, no deference is owed the DHEC Board's decision. Because the Board's decision incorporated the statutorily prohibited Agreement, we further hold that the staff denial of the Certification is now the final agency decision for purposes of contested case review. Consequently, the Certification is denied, and the contested case hearing pending in the ALC is moot. Moving forward, any activity, including any settlement negotiations, concerning the Certification must properly be directed to the Commission.

When undertaking contested case review, the ALC is the ultimate fact finder, and is not restricted by the findings of the administrative agency. *Risher v. S.C. Dep't of Health and Envtl. Control*, 393 S.C. 198, 207–08, 712 S.E.2d 428, 433 (2011); *see also Brown v. S.C. Dep't of Health and Envtl. Control*, 348 S.C. 507, 512, 560 S.E.2d 410, 413 (2002) (finding the ALC sits de novo in a contested case hearing).

However, as a general rule, "agencies charged with enforcing statutes . . . receive deference from the courts as to their interpretation of those laws." *State v. Sweat*, 379 S.C. 367, 385, 665 S.E.2d 645, 655 (Ct.App.2008) (citation omitted). Thus, the reviewing tribunal will defer to the relevant administrative agency's decision unless there is a compelling reason to differ. *S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control*, 363 S.C. 67, 75, 610 S.E.2d 482, 486 (2005) (holding the circuit court should have deferred to the Panel's decision because "there was no compelling reason to

---

3. Under the federal Clean Water Act, any entity commencing a project that will create a discharge into waters of the United States must apply for a state certification that the project will comply with that state's water quality standards. 33 U.S.C. § 1341(a)(1). However, if a state "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year)" the state certification requirement is waived. *Id.* It is undisputed that DHEC "acted" for purposes of the state certification requirement.

overrule the Panel's decision that the [regulation] governed"). An agency's interpretation of a statute or regulation that is erroneous or controlled by an error of law presents a compelling reason not to defer to the agency's interpretation. *See Brown v. Bi–Lo, Inc.*, 354 S.C. 436, 440–41, 581 S.E.2d 836, 838–39 (2003) (reversing the circuit court because the agency's conclusions in the case were affected by an error of law); *Sweat*, 379 S.C. at 385, 665 S.E.2d at 655 (finding the State was "not entitled to any deference in its interpretation because the plain language of [the statute at issue] refute[d] the State's position" and holding the Court was "free to read the statute based on its plain language without deference to the State's position"). Thus, where the plain language of the statute is contrary to the agency's interpretation, the agency's interpretation should be rejected. *Brown*, 354 S.C. at 440, 581 S.E.2d at 838. In this case, DHEC has not followed the relevant law in issuing its final decision, as the Board erroneously believed it had the authority to enter into the Agreement with the Corps and the GPA prior to issuing its final decision. Therefore, compelling reasons obviate *any* deference to the Board's decision in this case. DHEC usurped the Commission's authority in settling with the Corps and the GPA before the final review conference in contravention of the express requirements of section 54-6-10. *See* S.C.Code Ann. § 54-6-10(A) (endowing the Commission with the exclusive power "to negotiate on behalf of the State of South Carolina and enter into agreements with the State of Georgia, the United States Corps of Engineers, and other involved parties.").

Thus, we find the conditional staff denial of the Certification, which the Commission actively participated in formulating, is now the final agency decision for purposes of contested case review. *See* S.C.Code Ann. § 44-1-60(F) (Supp.2011) ("If a final review conference is not conducted within sixty days, the department decision becomes the final agency decision, and an applicant ... may request a contested case hearing before the [ALC].").

For these reasons, Appellants' request for a contested case hearing currently pending in the ALC is moot, as the relief Appellants ultimately seek is the conditional denial of the Certification. *See Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973) ("A case becomes

moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief.").

Therefore, we hold that the Certification is denied, and any future activity, including any negotiations concerning the Certification, must be directed to the Commission. *See* S.C.Code Ann. § 54–6–10(A).

BEATTY and HEARN, JJ., concur.

Justice KITTREDGE, dissenting.

I would dismiss the grant of original jurisdiction as improvidently granted. I emphasize that I do not necessarily disagree with the Court's holding that the South Carolina Department of Health and Environmental Control (DHEC) violated section 54–6–10 when it issued the 401 Certification. I believe the Court is addressing the isolated legal question prematurely. Accordingly, I respectfully dissent. I submit three reasons for dissenting.

First, this matter involves more issues than simply the section 54–6–10 challenge, all of which are presently pending in the Administrative Law Court (ALC). The many pending issues are inextricably linked, and therefore the dispute should be heard as a whole and not in piecemeal fashion. By cherry-picking this one issue for resolution, the Court directs the final outcome without allowing the matter to be fully heard.

Second, the Court has even foreclosed a full consideration of the section 54–6–10 challenge. An amicus curiae brief was filed challenging the constitutionality of the Savannah River Maritime Commission. This brief was rejected by an order of the Court. In hindsight, I believe it was error to deviate from our standard practice of accepting amici briefs. I do not know whether the amicus brief raised a meritorious issue. But I do believe we have an obligation to consider an issue fully before making a decision.

Third, today's result in favor of what Justice Pleicones refers to as Conservation Groups may have unintended consequences, particularly regarding the 401 Certification. The action of DHEC resulting in the 401 Certification occurred

within the one-year time period as required by federal law. Under the law, a state agency may approve or deny the application for a 401 Certification, but if it fails to "act" on the application within one year, the requirement for 401 Certification is waived. What is the effect of declaring DHEC's actions illegal? Further complicating the matter is the effect of the passage of 2012 Act No. 125, which provides:

> The General Assembly … suspends the authority of the South Carolina Department of Health and Environmental Control … for all decisions subsequent to 2007 related to all matters pertaining to the navigability, depth, dredging, wastewater and sludge disposal, and related collateral issues in regard to the use of the Savannah River as a waterway for ocean-going container or commerce vessels, in particular the approval by the department of the application of the United States Army Corps of Engineers for a Construction in Navigable Waters Permit for the dredging of the South Carolina portion of the Savannah River, because the authority of the Savannah River Maritime Commission, hereinafter the Maritime Commission, superseded the responsibilities of the department for such approval, as established by Act 56 of 2007. …

Does the legislature's suspension of all DHEC authority in this matter since 2007 impact the question of whether DHEC's 2011 action (DHEC staff **and** Board) has any efficacy in terms of constituting a timely action for 401 Certification purposes? Has the state of South Carolina, as a result of the Court's decision today, failed to act in a timely manner? Chief Justice Toal, for the majority of this Court, holds a timely action for 401 Certification purposes occurred through the DHEC "staff denial of the Certification." Yet the Chief Justice declares that the DHEC Board "acted in contravention of section 54–6–10." I cannot reconcile these positions, for I view them as mutually exclusive. I do not understand how the DHEC staff had legal authority to act, but the DHEC Board did not.[4]

---

4. The Chief Justice validates the authority of DHEC staff because the "Commission actively participated in formulating" the staff decision. The degree of the Maritime Commission's participation, which is a factual question, cannot be fully assessed based on the record before us. Venturing a guess on the limited record before us, it appears that the Maritime Commission's so-called active participation was nothing more

For these reasons, I believe the proper course is to stay our hand and let these many and interrelated issues be fully litigated before the ALC. Given that all parties trumpet the critical importance of this case to our state's environment and economy, I am concerned that the Court's decision today may ultimately have the regrettable effect of silencing South Carolina's voice in this matter of great public importance. In my judgment, we erred in accepting this single question in our original jurisdiction. Thus, I would dismiss the grant of original jurisdiction and allow the case to proceed in the normal course.

than submitting comments to DHEC, just as other entities did. Even if I were inclined to accept a finding of "active participation," that finding would, nonetheless, be insufficient to satisfy the text of section 54–6–10. Subsection (A) empowers the Maritime Commission "to negotiate on behalf of the State of South Carolina and enter into agreements with the State of Georgia, the United States Army Corps of Engineers, and other involved parties ... which bind the State of South Carolina...." Further, subsection (F) *expressly disempowers* DHEC from any role whatsoever. S.C.Code Ann. § 54–6–10(F) ("[O]n an interstate basis and specifically in regard to the State of Georgia, the responsibilities granted to the Savannah River Maritime Commission in this joint resolution supersede any other concurrent responsibilities of a particular state agency or department."). Therefore, the Maritime Commission's mere acquiescence with the action of the DHEC staff falls short of section 54–6–10 compliance.