# THE STATE OF SOUTH CAROLINA
## In the Supreme Court

Books-A-Million, Inc., Petitioner,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2020-001102

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

Appeal from the Administrative Law Court
John D. McLeod, Administrative Law Judge

Opinion No. 28110
Heard November 8, 2021 – Filed September 14, 2022

## AFFIRMED

Burnet Rhett Maybank, III and James Peter Rourke, both of Nexsen Pruet, LLC, of Columbia, for Petitioner.

Sean Gordon Ryan and Adam J. Neil, both of Columbia, for Respondent.

Anthony E. Rebollo, Benjamin Palmer Carlton, Carmen Vaughn Ganjehsani, of Richardson Plowden & Robinson, P.A., of Columbia, for Amici Curiae Warehouse Home Furnishings Distributors, Inc.

**JUSTICE HEARN:** For $25 per year, customers of Books-A-Million can become members in the "Millionaire's Club" to receive retail discounts. These memberships became the subject of a tax audit by the South Carolina Department of Revenue ("Department") and, as a result, Books-A-Million ("Taxpayer") was assessed nearly a quarter-of-a-million dollars in back taxes. The Administrative Law Court ("ALC") agreed with the Department's assessment, and the court of appeals affirmed on the grounds that the "proceeding or accruing" language of our sales tax act includes the returns from Millionaire's Club sales. We granted certiorari and affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Books-A-Million is a retail bookstore operating thirteen locations throughout South Carolina. In 2015, the South Carolina Department of Revenue audited three years of Books-A-Million's financial records and discovered that no sales tax was being charged on Millionaire's Club memberships. The Department thereafter issued a Notice of Proposed Assessment for $242,076.97[1] in unpaid sales tax.

Taxpayer was granted a contested hearing before the ALC, which upheld the assessment because, under South Carolina law, the sales of intangible memberships can be taxable if their value originates from the sale of taxable goods. Taxpayer then appealed to the court of appeals which affirmed. *See Books-A-Million, Inc. v. S.C. Dep't of Revenue*, 430 S.C. 388, 844 S.E.2d 399 (Ct. App. 2020). Both courts held that the pertinent language of "value proceeding or accruing" from the definition of "gross proceeds of sales" was inclusive of Taxpayer's Millionaire's Club membership fees because the language included value related to sales, not merely the value of the sales themselves. *See id.*; S.C. Code Ann. § 12-36-90 (2014 & Supp. 2021).

## ISSUE PRESENTED

Did the court of appeals err in concluding that Books-A-Million's "Millionaire's Club" membership fees were subject to sales tax under South Carolina law?

---

[1] This figure includes $15,703.13 in interest and $63.14 in penalties.

# LAW/ANALYSIS

Taxpayer argues that its sales of Millionaire's Club memberships are not taxable under South Carolina's sales tax because the language of the statute excludes it. The Department contends that our tax code contemplates value not just from sales of tangible goods, but from related costs because of the language "proceeding or accruing" as well as the jurisprudence of this Court. We agree with the Department.

We review questions of statutory interpretation de novo. *See Centex Int'l. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013). Tax statutes are to be interpreted like any other statutes. *Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, 399 S.C. 313, 319-20, 731 S.E.2d 869, 872 (2012) (holding, "[t]he usual rules of statutory construction apply to the interpretation of tax statutes"). We note that "the cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). Because "the best evidence of legislative intent is the text of the statute[,]" we turn our focus to the words used. *See Creswick v. Univ. of S.C.*, 434 S.C. 77, 82, 862 S.E.2d 706, 708 (2021).

In South Carolina, individuals who are engaged in the sale of tangible personal property must pay five percent of the gross proceeds of their sales in taxes. S.C. Code Ann. § 12-36-910(A) (2014). The statute defines tangible personal property as "personal property which may be seen, weighed, measured, felt, touched, or which is in any other manner perceptible to the senses." *Id*. § 12-36-60 (2014). "Gross proceeds of sales" is defined as "the value *proceeding or accruing from* the sale, lease, or rental of tangible personal property." *Id.* § 12-36-90. (emphasis added).

While the membership in question is itself intangible, Taxpayer is liable for sales tax generally because it is engaged in the sale of tangible personal property through the sales of books and other merchandise. The question then is whether the language "value proceeding or accruing from" subjects the bookstore to sales tax on Millionaire's Club memberships. This turns on the relationship between the membership and the sale in question.

Within the relevant statutory language, the term "proceeding" is critical. When used as an intransitive verb as it is in the statute, *Merriam-Webster* defines "proceed" to mean "to come forth from a source." *See Proceed*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/proceed (last visited November 21, 2021) (listing synonyms of proceed as, "spring, arise, rise, originate, derive, flow,

emanate, proceed, stem [which all] mean to come up or out of something into existence." Further delineating the term by saying "proceed stresses place of origin, derivation, parentage, or logical cause"). For a monetary value to proceed from something, the value must come from it. Here, the value of the club memberships originates from the sale of taxable goods because the only benefit to buying the Millionaire's Club membership is discounts on taxable transactions.[2] Books-A-Million does not require membership for entry into its stores, nor does the membership give any proprietary rights such as advanced purchasing. The only difference between a Millionaire's Club membership holder and the general public is that members pay less per purchase of books and merchandise because they have opted to pay $25 per year to Taxpayer. Allowing Books-A-Million to avoid sales tax on the discounted amount because it has received payment from its customers on a yearly instead of a per-purchase basis would be contrary to the South Carolina tax code. This Court has interpreted our tax code to have broad language which inextricably links value to sales. *See Travelscape, LLC v. S.C. Dep't of Revenue*, 391 S.C. 89, 97, 705 S.E. 2d 28, 32 (2011) (finding hotel fees, charged by the taxpayer exclusively for services, were subject to sales tax under the plain language of section 12-36-920(A) as gross proceeds because the service was incidental to the purchase of accommodations). Here, the ALC recognized this broad interpretation in holding:

> South Carolina courts have analyzed the definition of gross proceeds of sales several times and have concluded that gross proceeds of sales includes *all* value that comes from or is [the] direct result of the sale, lease, or rental of tangible personal property.

Other states have unique statutory language that yields different results. In *Barnes & Noble v. Huddleston*, the Tennessee court of appeals, in an unpublished decision, concluded a bookstore's discount membership was nontaxable. *See* 1996 WL 596955 (Tenn. Ct. App. 1996). While the facts are similar, the statute involved is not. The Tennessee provision applied a six-percent sales tax to the total "sales price." *See* Tenn. Code Ann. § 67-6-202(a). The statute defines "sales price" as "the total amount for which a taxable service or tangible personal property is sold… provided, that cash discounts allowed and taken on sales shall not be included.…"

---

[2] Members get (a) 40% off the list price of current hardcover Books-A-Million Bestsellers, (b) 20% off the list price of all Books-A-Million adult hardcover books, (c) 10% off the marked Books-A-Million designed adult hardcover books, (d) free shipping with online purchases, (e) up to 40% off bestsellers and featured items online, (f) periodic special promotions online and at Books-A-Million Stores, and (g) one five-dollar reward card good for 30 days after activation.

Tenn. Code Ann. § 67-6-102(25) (1994). This significant difference from our state's "proceeding or accruing language" language led to a different result. In Tennessee, the legislature specifically sought to calculate the tax base as a number exclusive of discounts. In South Carolina, the legislature tied together taxable tangible goods with related intangible assets. Therefore, South Carolina's legislative intent is distinguishable from Tennessee's.

In its brief and in oral argument, counsel for Books-A-Million attempted to bolster its case by arguing that certain "big box" stores are not being taxed on their memberships. While these "conditional retail" and/or "members-only warehouses" are likely not being taxed on their membership sales, the Department declined to confirm or deny this—ostensibly due to taxpayer confidentiality—but proceeded to accept this proposition *arguendo*. Justice Kittredge's dissent[3] would have us treat this hypothetical admission as the dispositive fact in the case. Whether these stores are actually suffering this alleged disparate treatment is not at issue for the Court to decide today. Rather, we are asked to determine whether our sales tax statute permits the Department to tax Books-A-Million on their Millionaire's Club memberships. To be clear, in reaching our conclusion that these memberships are subject to sales tax, we do so based on our view of statutory interpretation, not based on any deference to the Department. We leave the taxability of these other entities for another day.[4]

---

[3] We also note that Justice Kittredge's dissent reads our argument as one based on preservation, but that is inaccurate. Outside of this footnote, the word "preservation" does not appear in the Court's opinion. In our view, there are no preservation issues in this case. Instead we focus on the facts in the record, not hypotheticals about parties outside this litigation that were accepted for argument's sake.

When Justice Few pressed at oral argument how this hypothetical disparate treatment argument effects the outcome of this appeal, Taxpayer failed to offer a specific legal theory to justify reversing the court of appeals and instead relied on a general notion of fairness.

[4] In so doing, we are reminded of the words of Chief Justice Roberts during his confirmation hearing that judges should only "call balls and strikes[.]" John G. Roberts, Jr., Confirmation Hearing, before the United States Judiciary Committee (September 12, 2005). The issue pitched to us today concerns only Books-A-Millions' memberships, and that is the issue we resolve.

Books-A-Million also invites us to compare significantly different businesses such as golf courses, zoos, museums, and grocery stores, painting a bleak picture of the havoc[5] which would ensue if the Department's position were affirmed. We disagree because with Millionaire's Club memberships the *only* thing that members receive is a discount on taxable retail sales.

The generic private golf club charges a membership fee as a requirement to play on its course or buy items in its pro shop. This is a conditional retail agreement whereby the membership provides not for discounts, but for use. Museums and zoos are similarly distinguishable. Though most museums and zoos are open to the public, many charge membership fees for discounted admission. This is not discounted retail and is charged under a different section of the South Carolina tax code that does not contain the "proceeding or accruing" language at issue here. *See generally*, S.C. Code Ann. § 12-21-2420 (2017) (making no mention of a tax on "gross proceeds of sales" and thereby no reference to the "proceeding or accruing" language).

Consistent with its parade-of-horribles scenario, Books-A-Million also argues that grocery stores will be impacted by the decision in this case, positing that if an individual in line at a grocery store check-out has one item exempt from tax—a gift card, for example—then the Department's interpretation of the "proceeding or accruing" language would render the entire purchase taxable. Because the pertinent language is "proceeding" and not "preceding," this argument is unavailing.[6] A gift card is not a membership that provides discounts on the purchase of other items in the grocery basket; rather, it is an alternative form of consideration. When a gift card is used to purchase a taxable good, there is sales tax on *that* transaction rather than

---

[5] Contrary to Taxpayer's argument, ruling that the membership is not taxable is the result most likely to produce havoc. Under the position advanced by Taxpayer, books could be sold at a 90% or 99% discount as a benefit of membership. This is unquestionably tax avoidance and is not legally distinguishable from lesser discounts as present here.

[6] Books-A-Million is not alone in its confusion of these two words. Justice James's dissent concludes, "neither the purchase of a membership, nor the intangible value it holds, proceeds from an as-yet nonexistent purchase of merchandise." Because we can readily imagine an infinite number of loopholes based on this characterization, we disagree that the legislature intended that result. Timing is incidental; it must be the relationship between the two items being purchased that is dispositive of whether one item's value proceeds or accrues from another's.

on the original transaction purchasing the card itself. No interpretation or argument advanced by the Department in this case would change that distinction or connect the purchase of gift cards with the taxable items bought along with them in the original transaction simply because they were purchased at the same time.[7] Between the items in the grocery basket, there is no relationship such that one is deriving value from another. Therefore, value does not proceed or accrue in the way this court has determined is necessary to levy a tax and this case's outcome would have no impact on this scenario.

## CONCLUSION

The ALC correctly applied section 12-36-90 to Books-A-Million's sale of Millionaire's Club memberships. The court of appeals did not err in affirming this interpretation but we modify its opinion to the extent it relied on the principle of agency deference as support. A plain reading of the South Carolina tax code coupled with the interpretation this Court has repeatedly utilized results in our sales tax being more inclusive than those of other states. The Millionaire's Club memberships possess value based solely on the discounts they afford on taxable sales. Therefore, Books-A-Million's sales of Millionaire's Club memberships are subject to sales tax in South Carolina.

The decision of the court of appeals is **AFFIRMED.**

**BEATTY, C.J., and FEW, J., concur. JAMES, J., dissenting in a separate opinion in which KITTREDGE, J., concurs. KITTREDGE, J., dissenting in a separate opinion.**

---

[7] Indeed, grocery stores regularly sell both taxable and non-taxable items in the same transaction and, as acknowledged by Taxpayer in oral argument before the court of appeals, the point of sale machine is programmed to make the appropriate demarcations.

**JUSTICE JAMES:** I respectfully dissent. I would reverse the court of appeals and hold the memberships sold by Books-A-Million are not subject to a sales tax.

## DISCUSSION

### A. Standard of Review

Section 1-23-610(B) of the Administrative Procedures Act sets forth the appropriate standard of review in an appeal from the Administrative Law Court. *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 28, 766 S.E.2d 707, 715 (2014). Specifically, section 1-23-610(B)(d) provides an appellate court may reverse the decision of the ALC if the decision is affected by an error of law. As I will explain, I believe the ALC's decision is controlled by its erroneous interpretation of various provisions of the South Carolina Sales and Use Tax Act ("the Act"). *See* S.C. Code Ann. §§ 12-36-5 to -2695 (2014 & Supp. 2021).

Questions of statutory interpretation are questions of law, which we review de novo. *Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). Because "[t]he best evidence of legislative intent is the text of the statute[,]" we focus upon the words used. *Creswick v. Univ. of S.C.*, 434 S.C. 77, 82, 862 S.E.2d 706, 708 (2021).

Quoting *Alltel Communications, Inc. v. South Carolina Department of Revenue*, 399 S.C. 313, 319-20, 731 S.E.2d 869, 872 (2012), the majority correctly states that "[t]he usual rules of statutory construction apply to the interpretation of tax statutes[.]" More specifically, however, we have concluded that "in statutes levying taxes, the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used[.]" *Cooper River Bridge, Inc. v. S.C. Tax Comm'n*, 182 S.C. 72, 76, 188 S.E. 508, 510 (1936) (quoting *United States v. Merriam*, 263 U.S. 179, 187-88 (1923)).

The ALC and the court of appeals agreed with the Department that the statutes unambiguously require Books-A-Million to pay a sales tax on sales of memberships. The majority of this Court affirms that conclusion. I believe the majority and the courts below have "extended by implication" the literal meaning of the applicable statutes, especially section 12-36-90. I would hold the statutes unambiguously provide no sales tax is owed.

**B. Analysis**

Three statutes in the Act are in play in this case—sections 12-36-60, -90, and -910(A). Section 12-36-910(A) provides that persons who sell tangible personal property at retail must pay a sales tax on the gross proceeds of their sales. Section 12-36-60 defines "tangible personal property" as "personal property which may be seen, weighed, measured, felt, touched, or which is in any other manner perceptible to the senses." The parties agree Books-A-Million memberships are not tangible personal property. The primary benefits of a membership are discounts on merchandise and free shipping.

The dispute in this case centers upon the interpretation of the term "gross proceeds of sales," which is defined in section 12-36-90 as "the value proceeding or accruing from the sale, lease, or rental of tangible personal property." The parties agree "the sale of tangible personal property" contemplated by section 12-36-90 is the sale of merchandise. Of course, Books-A-Million collects a sales tax on the sale of merchandise and pays it over to the Department. The precise question we must answer is whether the $25 Books-A-Million receives from the sale of a membership is a "value proceeding or accruing from" a later sale of tangible personal property.

The Department argues the answer to this question turns on the general relationship between the membership and the eventual purchase of tangible merchandise. The Department contends the statutes unambiguously provide that the $25 membership payment Books-A-Million receives on the front end is a value "proceeding or accruing from" the sale of merchandise, which occurs on the back end. Books-A-Million contends the statutes do not require payment of a sales tax on the memberships because the $25 value Books-A-Million receives from the sale of a membership cannot possibly proceed or accrue from a sale of merchandise that has not yet occurred. I agree with Books-A-Million.

Again, under sections 12-36-60, -90, and -910(A), Books-A-Million must pay a sales tax on the value proceeding or accruing from the sale of tangible personal property. First, I consider the word "value" as it is used in section 12-36-90. *Merriam-Webster* defines "value" as "the monetary worth of something." *See Value*, Merriam-Webster, https://www.merriam-webster.com/dictionary/value (last visited June 21, 2022). Because Books-A-Million is the taxpayer, we must consider the value Books-A-Million receives from the sale of the membership, not the value the member receives from buying the membership.

I next consider the words "proceeding or accruing from" as they are used in section 12-36-90. *Merriam-Webster* defines "proceed" as "to come forth from a source." *See Proceed*, Merriam-Webster, https://www.merriam-webster.com/dictionary/proceed (last visited June 21, 2022). *Merriam-Webster* defines "accrue" as "to come as a direct result of some state or action." *See Accrue*, Merriam-Webster, https://www.merriam-webster.com/dictionary/accrue (last visited June 21, 2022).

The statutes require the payment of a sales tax on the value that proceeds or accrues from the sale of tangible personal property, not from the sale of an intangible membership. The Department argues "section 12-36-90 has only one reasonable interpretation—gross proceeds of sales include *all* value that proceeds or accrues to a taxpayer from the sale of tangible personal property." I agree with that general statement, but the sale of tangible personal property—merchandise—comes after the sale of the membership. The "value proceeding or accruing from" the sale of merchandise cannot possibly include the $25 value Books-A-Million receives before it sells the merchandise. I believe the Department's interpretation does violence to the plain meaning of section 12-36-90.

The majority states "the value of the club memberships originates from the sale of taxable goods because the only benefit to buying the Millionaire's Club membership is discounts on taxable transactions." I again note that because Books-A-Million is the taxpayer, we must consider the value Books-A-Million receives from the sale of a membership, not the value the member receives from buying the membership; however, even if we consider the value received by the member, the majority's reasoning does not track the plain language of section 12-36-90. Members realize the benefits of their intangible membership only *if* they purchase merchandise. Quite plainly, neither the purchase of a membership, nor the intangible value it holds, proceeds from an as-yet nonexistent purchase of merchandise.[8]

---

[8] In its footnote 6, the majority takes issue with this sentence and maintains I have confused the terms "proceeding" and "preceding." For what it is worth, the quoted sentence ended my point that we must view the value of the sale of the membership through the eyes of Books-A-Million, not the member, but that even if we do view the transaction through the eyes of the member, the majority's reasoning does not track the plain language of section 12-36-90. Whatever the case, I, like the majority, do not understand Books-A-Million's rationale as to how the outcome of this appeal might impact certain grocery store transactions; however, I know the difference between the terms "proceeding" and "preceding." The final sentence of the

The majority has written into the Act an exception allowing the Department to collect a tax on the sale of a non-tangible item. The legislature can amend the Act to subject such a sale to a tax, but this Court does not have that authority. An exception to the plain and unambiguous language of a statute must come from our legislature. *Doe v. R.D.*, 308 S.C. 139, 142, 417 S.E.2d 541, 543 (1992).

1. *Travelscape*

The majority cites *Travelscape, LLC v. South Carolina Department of Revenue*[9] for the proposition that we have interpreted our tax code to have broad language which "inextricably links value to sales." I respectfully disagree with that characterization of *Travelscape*. Though the Department insists otherwise, we have never assigned such a reading to our tax code. The holding in *Travelscape* was limited to the unique facts of that case and is of no import to the Department's dispute with Books-A-Million.

Travelscape is an online company providing discount travel services through a website, Expedia.com. Travelscape entered into agreements with hotels in South Carolina under which the hotels accepted discounted room rates lower than the rate offered by the hotel to the general public (the "net room rate"). When a customer booked a room on the Expedia website, Travelscape charged the customer's credit card and added to the net room rate a service fee, a facilitation fee, and a tax recovery charge. Travelscape paid the hotel the net room rate and the tax recovery charge, and it kept the service and facilitation fees. The Department contended Travelscape was obligated to pay a sales tax on those two fees, and Travelscape contended it was not.

The pertinent sales tax provision in *Travelscape* was section 12-36-920(A). Subsection (A) imposes a sales tax on "the gross proceeds derived from the rental or charges for any rooms" furnished by a hotel. Faced with the question of what meaning to give "gross proceeds" as used in section 12-36-920(A), we used the definition of "gross proceeds of sales" set forth in section 12-36-90(1)(b)(ii) (defining "gross proceeds of sales" as "the value proceeding or accruing from

---

majority's footnote 6 shows the majority does not read the words of section 12-36-90 as they are plainly written. The majority states, "[t]iming is incidental; it must be the relationship between the two items being purchased that is dispositive of whether one item's value proceeds or accrues from another's." I disagree with that statement. Timing is not "incidental" under section 12-36-90. It is paramount.

[9] 391 S.C. 89, 705 S.E.2d 28 (2011).

the . . . rental of tangible personal property . . . without any deduction for . . . the cost of materials, labor, or service"). The narrow issue before us was whether the service and facilitation fees paid by customers to Travelscape were taxable under section 12-36-920. We held that "[b]ecause the cost of services is specifically included in the definition of gross proceeds of sales, . . . the fees retained by Travelscape for its services are taxable as gross proceeds." *Id*. at 98, 705 S.E.2d at 33.

Our holding in *Travelscape* was narrow and tailored to the facts of that case: the service and facilitation fees charged by Travelscape were, by clear statutory provision, part of the gross proceeds subject to sales tax. However, in the instant case, the court of appeals adopted the Department's reading of *Travelscape* by adding the verbiage that our holding in *Travelscape* was partly controlled by our conclusion that the service fees were "merely incidental" to the purchase of the hotel accommodations. *Books-A-Million*, 430 S.C. at 394, 844 S.E.2d at 402. The phrase "merely incidental," and for that matter, the word "incidental," appear nowhere in *Travelscape*.

2. *Meyers Arnold*

The Department relies heavily upon the court of appeals' decision in *Meyers Arnold, Inc. v. South Carolina Tax Commission*[10] for the proposition that "but for" the sale of tangible merchandise, Books-A-Million would not sell memberships. In that case, the court of appeals held lay away fees Meyers Arnold received were subject to sales tax as gross proceeds of sales. Under the lay away approach to sales, if a customer wanted to buy an item but did not want to pay the entire sales price up front, the store might offer to hold the item aside for the customer and charge a lay away fee. Meyers Arnold contended it did not have to pay sales tax on the lay away fee. As the court of appeals noted, the pertinent statute in that case, section 12-35-30, defined "gross proceeds of sales" as "the value proceeding or accruing from the sale of tangible personal property . . . without any deduction for service cost." *Id.* at 307, 328 S.E.2d at 923. The court of appeals concluded that "[b]ut for the lay away sales, Meyers Arnold would not receive the lay away fees. The fees are obviously charged for the service rendered in making lay away sales." *Id*. The court of appeals simply held the lay away fee was a service cost incurred in the sale of tangible personal property and, pursuant to statute, was included in the seller's "gross proceeds of sales." The court of appeals' holding in *Meyers Arnold* is not applicable in the least to the memberships sold by Books-A-Million.

---

[10] 285 S.C. 303, 328 S.E.2d 920 (Ct. App. 1985).

### 3. *Rent-A-Center East*

The Department argues the court of appeals' holding in *Rent-A-Center East, Inc. v. South Carolina Department of Revenue*[11] requires the application of a sales tax to Books-A-Million memberships. I disagree. In that case, Rent-A-Center operated establishments allowing customers to rent-to-own durable consumer goods such as furniture, appliances, and electronics. In conjunction with these transactions, Rent-A-Center offered an Optional Liability Waiver ("waiver"). If a customer purchased a waiver, Rent-A-Center waived any right it had under the rent-to-own contract to demand the customer pay for damage to the goods purchased under the contract. The waiver absolved the customer of the risk of loss if the customer paid all installments, including the waiver fee, through the date of loss. Rent-A-Center did not charge a sales tax on the waiver fee. After an audit, the Department demanded Rent-A-Center pay a sales tax on the waiver fees for the audit period. The court of appeals held that because the waivers and the rental agreements "were inextricably linked, the value proceeding from the Rental Agreements included the value [Rent-A-Center] received from the Waivers[.]" *Id.* at 592-93, 824 S.E.2d at 222-23.

The Department argues *Rent-A-Center* requires the imposition of a sales tax on Books-A-Million memberships because there is no meaningful difference between the money collected for a liability waiver and the Books-A-Million membership fee. I disagree. The waiver fees collected by Rent-A-Center were collected per transaction, while the Books-A-Million membership fees are not.

### 4. Agency Deference

The Department argues its interpretation and application of the Act are entitled to deference. In *Sierra Club v. South Carolina Department of Health & Environmental Control*, we summarized the deference owed to an agency's interpretation of a statute or regulation the agency is charged with administering:

> "The Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation." *Brown v. Bi-Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003). "If the statute or regulation is silent or ambiguous with respect to the specific issue, the court then must give deference to the agency's interpretation of the statute or regulation, assuming the interpretation is worthy of deference." *Kiawah*, 411 S.C. at 33, 766 S.E.2d at 717.

---

[11] 425 S.C. 582, 824 S.E.2d 217 (Ct. App. 2019).

"Nevertheless, where . . . the plain language of the statute or regulation is contrary to the agency's interpretation, the Court will reject the agency's interpretation." *Brown*, 354 S.C. at 440, 581 S.E.2d at 838. Therefore, in summary, "We defer to an agency interpretation unless it is 'arbitrary, capricious, or manifestly contrary to the statute or regulation.'" *Kiawah*, 411 S.C. at 34-35, 766 S.E.2d at 718 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

426 S.C. 236, 256, 826 S.E.2d 595, 606 (2019) (cleaned up). Because the Department's interpretation of the applicable statutes is manifestly contrary to the plain meaning of the statutes, I would give no deference to that interpretation.

## CONCLUSION

In *Jack Ulmer, Inc. v. Daniel*, we reviewed a circuit court ruling addressing the applicability of the unemployment tax act to a taxpayer. 193 S.C. 193, 7 S.E.2d 829 (1940). We quoted with approval the entire circuit court order, in which the circuit court pointedly noted, "The Act is a taxing law and should be strictly construed, and the Court does not think that anyone who is liable for contributions should escape liability, but neither does the Court think that the meaning and interpretation of the Act should be stretched so as to include people not specifically included therein." *Id.* at 200, 7 S.E.2d at 832. I agree with this sentiment. I see no reason to permit a taxing statute to be stretched beyond its plain meaning to include a transaction that does not fall within the grip of the tax. In my view, the court of appeals' interpretation of the term "gross proceeds of sales" and the phrase "proceeding or accruing from" stretches the Act beyond its plain meaning. I would reverse the court of appeals and hold the Books-A-Million membership fee is not subject to a sales tax.

**KITTREDGE, J., concurs.**

**JUSTICE KITTREDGE:** I join Justice James in dissenting. I write separately to offer a few additional thoughts to Justice James's persuasive dissent, with which I fully concur.

The Department of Revenue (the Department) acknowledges the Books-A-Million club membership is not tangible personal property. For example, in the Administrative Law Court, the Department stated it "has never argued that the membership program is tangible personal property." Instead, the Department advances a strained interpretation of the phrase "proceeding or accruing from" in section 12-36-90 of the South Carolina Code (Supp. 2021). According to the Department, anything it believes is "inextricably linked" to a sale of tangible personal property is subject to the state sales tax. The majority reaches its decision today by adopting the Department's argument. This interpretation of "proceeding or accruing from" may have ostensible appeal from a public policy standpoint, but, as Justice James demonstrates, it is contrary to our statutes.

Beyond Justice James's dispositive statutory construction position, Books-A-Million's allegation of disparate treatment is troubling—it is alleged the Department has chosen to treat other, similar marketing approaches differently. For instance, Books-A-Million contends that Costco and Sam's Club sell memberships that allow members to purchase tangible personal property at reduced or wholesale prices. Yet, according to Books-A-Million, the Department gives Costco and Sam's Club a pass, exempting those membership fees from the sales tax base. At Costco, for example, a membership is mandatory, and only members are allowed to purchase goods. On the other hand, any member of the public—including non-members—may purchase an item from Books-A-Million. It would seem the Department's "inextricably linked" approach would easily capture Costco's membership fees in the sales tax base. I do not suggest for a moment that Costco's (or Sam's Club's) membership fees should be subject to the state sales tax. Indeed, in dissenting I find based on our statutes that the membership fees of Books-A-Million and other similarly situated taxpayers are not subject to the state sales tax. But Justice James and I have lost this argument, and the majority's decision puts Books-A-Million's disparate treatment challenge front and center.

The majority suggests the disparate treatment argument belatedly arose on appeal. In truth, Books-A-Million has pressed this challenge from the beginning. The record is replete with Books-A-Million raising the concern. The following, taken from Books-A-Million's argument in the Administrative Law Court, is typical of

its constant drum beat crying foul over the Department's apparently inexplicable, unequal practice of taxing similar membership schemes:

> So why is the Department attempting to take the contrary positions that the membership fees charged by Sam's Club and Costco are not subject to sales tax – but Books-A-Million are?  The membership fees charged by Sam's Club "would not exist without [Sam's] sale of tangible personal property."  "Said differently, but for [Sam's Club's] sales of tangible personal property, [Sam's Club] would not receive the [Sam's Club] Membership Fees."  So, obviously "The mere fact that the [Sam's Club] Membership Fees would not exist without [Sam's Club's] sales of tangible personal property [does not] make the [Sam's Club] Membership Fees part of the value proceeding or accruing from the [Sam's Club's] sales of tangible personal property.  Accordingly, the Membership Fees [charged by Sam's Club] are [not] includable in the [Sam's Club] gross proceeds of sales and subject to sales taxes."

> Does this case turn on the fact that Books-A-Million doesn't have a "membership-only warehouse?"  Obviously, no one would pay to join a membership-only warehouse if it didn't sell goods (or services).  Does this case turn on the fact that Books-A-Million doesn't offer an adequate selection of brand-name merchandise?  Books-A-Million claims that it does.  It does meet the Sam's Club/Costco test that all membership types receive the same benefits.

> So what's the difference?

(Quoting the Department's reasoning to tax the Books-A-Million memberships, with alterations inserted by Books-A-Million.)  The majority wants to paint a picture that this challenge was raised by Books-A-Million only "[i]n its brief and oral argument," and thus the Court should not address this unpreserved issue.  Moreover, the majority lectures that we should not address unpreserved issues by citing to the familiar mantra that judges, like umpires, "should only 'call balls and strikes.'"  I agree.  But it is disingenuous to suggest that this issue was raised for the first time in brief and oral argument.  As demonstrated above, Books-A-Million has been throwing this pitch since the first inning.  I do not know whether Books-A-Million's pitch is a ball or a strike due to the Department's recalcitrance in helping us explore the issue, but I believe we have a duty to make the call.

A cornerstone of the law is the unwavering commitment to ensure that the law is applied even handedly—similarly situated parties must be fed from the same spoon. The law abhors the dissimilar treatment of the similarly situated. One would think the Department would welcome the opportunity to respond to and refute the troubling charge made throughout this litigation by Books-A-Million regarding the disparate treatment of taxpayers, but it ran from the opportunity instead.

At oral argument, the Department was invited to distinguish Books-A-Million's taxable membership fee from the non-taxable membership fees at Costco and Sam's Club. Regrettably, the Department declined the Court's invitation to explain why Costco's and Sam's Club's membership fees are not subject to sales taxes. Nonetheless, in its brief, the Department offered what I believe is a weak rationale to avoid judicial scrutiny of the alleged disparate treatment: The Department contends its decision to treat Books-A-Million differently from Costco and Sam's Club is entitled to "deference." The concept of deference to an administrative agency has no place on the issue of alleged unlawful disparate treatment of taxpayers. Perhaps in recognition of the lack of merit in its deference defense, the Department's brief concludes by claiming it does not "allow a retailer to use a discount club as a means to avoid payment of sales tax." The Department continues, "Rather than charging the actual retail price for the merchandise, a retailer could simply sell a coupon or club membership that provides extensive discounts to the consumer and then only charge sales tax on the greatly reduced purchase price." This, the Department states, "would be an improper . . . method of impermissibly lowering the sales tax obligations." Books-A-Million counters that this is precisely the situation with Costco and Sam's Club—the non-taxable club membership allows the member to purchase merchandise at a reduced price. Notably, the Department is silent to Books-A-Million's rejoinder. That silence is accepted by the majority.

I offer no opinion on the merits of the Department's decision to treat Books-A-Million differently from Costco and Sam's Club. Perhaps there is a valid reason why the Department treats these taxpayers differently, but I am unable to determine a valid reason from this record. Given the importance of ensuring that all similarly situated taxpayers are treated equally, I would prefer this Court not allow the Department to dodge such an important challenge. The charge of disparate treatment of similarly situated taxpayers is squarely before the Court, and I would insist upon a resolution of this challenge—force the Department to address the issue and call it a ball or a strike—to ensure that our taxation laws are applied equally to all similarly situated taxpayers, free from the Department's arbitrary

selection of winners and losers.

I dissent.